UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OMNIPOINT HOLDINGS, INC,<br><br>Plaintiff,<br><br>v.<br><br>THE TOWN OF SAUGUS, THE ZONING BOARD OF APPEALS OF THE TOWN OF SAUGUS, CATHERINE A. GALENIUS, ROBERT J. COX, BEN STURNIOLO, JOSEPH MCGOWAN and PETER BOGDAN in their capacities as members of the Saugus Zoning Board of Appeals,<br><br>Defendants. | 04-10737 NG<br>Civil Action No.<br><br>MAGISTRATE JUDGE Alexander<br><br>RECEIPT # _____<br>AMOUNT $ 150 —<br>SUMMONS ISSUED 7<br>LOCAL RULE 4.1 _____<br>WAIVER FORM _____<br>MCF ISSUED _____<br>BY DPTY. CLK. _____<br>DATE 4-12-04 |

## COMPLAINT

This action arises out of the unlawful denial by the Saugus Zoning Board of Appeals ("Zoning Board") of an application, pursuant to the Town of Saugus Zoning By-Laws ("By-Laws") by Omnipoint Holdings, Inc. ("Omnipoint") for a special permit to alter a pre-existing, non-conforming use and structure and four variances to allow Omnipoint to add three wireless communications panel antennas upon the face of an electrical utility tower owned by the New England Power Company and to construct a small, fenced area to accommodate three equipment cabinets immediate below the utility tower. This denial violates the Federal Telecommunications Act of 1996, 47 U.S.C. § 332. As a result, Omnipoint seeks an injunction from this Court directing the Zoning Board to grant Omnipoint's application for a special permit and variances with respect to said wireless communications facility. Omnipoint also seeks

damages for defendants' violation of its rights under the Federal Telecommunications Act of 1996 and the Civil Rights Act, 42 U.S.C. § 1983.

## PARTIES

1. Plaintiff, Omnipoint, is a Delaware corporation with a principal place of business at 50 Vision Boulevard, East Providence, Rhode Island. Omnipoint is a leader in commercial wireless Personal Communication Services ("PCS") throughout the United States. Omnipoint successfully bid upon and received a PCS wireless broadcast license from the Federal Communications Commission ("FCC") for several cities, including the greater Boston area.

2. Defendant, the Town of Saugus, (the "Town"), is a duly authorized municipality constituted and existing under the laws of the Commonwealth of Massachusetts.

3. Defendant, the Zoning Board, is a duly authorized unit of the Town that has been delegated the authority, among other things, to grant special permits and variances under the By-Laws. A true and accurate copy of the By-Laws is attached hereto as Exhibit A.

4. Defendants, Catherine A. Galenius, Robert J. Cox, Ben Sturniolo, Joseph McGowan and Peter E. Bogdan are each residents of the Town and together serve as the Zoning Board that denied Omnipoint's application for the variances and a special permit to alter a pre-existing use at issue in this action.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically § 332 of the Federal Telecommunications Act of 1996 and the Civil Rights Act, 42 U.S.C. s. 1983.

Case 1:04-cv-10737-NG    Document 1    Filed 04/12/2004    Page 3 of 11

6. This Court also has subject matter jurisdiction of this action under 28 U.S.C. § 1343(a), as this is an action to redress the deprivation, under color of law, of rights and privileges secured by the laws and Constitution of the United States.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b), since the defendants each reside in this District, and the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### The Personal Communications Service Technology

8. Omnipoint is a communications venture committed to providing integrated wireless personal communications services by building a national wireless network using PCS technology. PCS technology is a new generation of wireless service that uses digital transmission to improve the services available to consumers.

9. Unlike cellular services using analog-based systems, PCS digital technology converts voice or data signals into a stream of digits to allow a single radio channel to carry multiple simultaneous signal transmissions. This allows Omnipoint to offer services often unavailable in analog-based systems, such as secured transmissions and enhanced voice, high-speed data, paging and imaging capabilities as well as voice mail, call forwarding and call waiting.

10. Mobile telephones using PCS technology operate by transmitting a radio signal to antennas mounted on a tower, pole, building, or other structure. The antenna feeds the signal to electronic devices housed in a small equipment cabinet, or base station. The base station is connected by microwave, fiber optic cable, or ordinary telephone wire to the Base Station Controller, subsequently routing the calls throughout the world.

3

11. Because the PCS system has a lower signal and a much higher frequency than traditional cellular technology, the range between the PCS mobile telephone and the antennas is limited.

12. In order to provide continuous service to a PCS telephone user, coverage must overlap in a grid pattern resembling a honeycomb. In the event that Omnipoint is unable to construct a cell site within a specific geographic area, Omnipoint will not be able to provide service to the consumers within that area.

13. Omnipoint's engineers use complex computer programs and extensive field testing to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also takes into account the topography of the land, the coverage boundaries of neighboring cells and other factors. In order for the entire system to be operational, there must be properly placed cell sites installed and functioning so that seamless coverage can be realized, and only when the entire system is operational will a PCS telephone user have service and an uninterrupted conversation throughout a given territory. If there is no functioning cell site within a given area, there would be no PCS telephone service for customers within that area, and mobile customers who travel into the area will experience blocked calls, in which callers experience an abrupt and complete loss of signal.

14. Based upon Omnipoint's research and analysis as part of an extensive review of call traffic in the targeted area of Saugus, Omnipoint determined that, in order to fill a significant gap in its coverage, which would otherwise preclude its provision of seamless, uninterrupted coverage in the targeted portion of Saugus, Omnipoint needed to mount three panel antennas on the face of a New England Power Company utility tower ("Nepco Pole #19") and to install three refrigerator-sized equipment cabinets, or base stations, at the foot of the tower, to be enclosed by fencing.

4

15. Nepco Pole #19 is a sixty-four foot tall utility support tower which is part of a chain of electric utility towers supporting high tension electric power lines in an otherwise residential section of Saugus.

16. The power transmission lines and towers constitute a pre-existing, non-conforming land use and structure within the meaning of Article IX of the By-Laws.

## Federal Statutory Control Over PCS Siting

17. Section 704 of the Federal Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332(c), governs federal, state and local government regulation of the siting of PCS facilities such as the one at issue here.

18. The Act provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Act may seek expedited review in the federal courts. 47 U.S.C. § 332(c)(7)(B)(v).

## The Request for Variances and a Special Permit for Alteration of a Pre-Existing, Non-Conforming Use and Structure

19. On or about January 14, 2004, Omnipoint applied, pursuant to Section 9.2 of the By-Laws, for a special permit to alter a pre-existing, non-conforming use and structure to flush-mount three panel antennas upon the face of Nepco Pole #19 and to paint them to match said Pole, and to install appurtenant cables along the pole from its antennas to its equipment cabinets at the base of the pole. A true and accurate copy of the application materials submitted is attached hereto as Exhibit B.

20. Under Section 9.2 1 of the By-Laws, the sole criterion for evaluating the grant of a special permit to alter a pre-existing, non-conforming use or structure is whether the "change…or alterations shall be more detrimental than the existing non-conforming use to the neighborhood".

5

21. The alteration sought by Omnipoint to the high-voltage power transmission poles and lines is the addition of three panel antennas, painted to match and flush-mounted on the face of Nepco Pole #19, (and attached so as not to exceed the existing height of Nepco Pole #19), and the installation of three refrigerator-sized equipment cabinets within a fenced area at the base of the pole. These minor alterations pose no health risk to the neighborhood and cannot, in any reasonable analysis, be considered "more detrimental" either aesthetically or functionally, than a line of utility towers carrying high-tension electric power lines.

22. In addition to its request for a special permit to alter a pre-existing, non-conforming use and structure, Omnipoint also requested variances from use restrictions under Article XIV of the By-Laws, which Article creates a Wireless Communications Services District.

23. Notwithstanding its request for such variances, it is not at all clear that such variances are a necessary requirement for Omnipoint to mount its antennas and to install its equipment cabinets.

24. Indeed, having been asked to review Omnipoint application, the Saugus Town Counsel provided a legal opinion to the Town's Selectmen and to the defendant Board of Appeals that Article XIV of the By-Laws "was intended to establish a district for wireless communication facilities commonly known as cell towers and freestanding monopoles" and not to the use proposed by Omnipoint. In his opinion, the Saugus Town Counsel stated that "at most, (Omnipoint) should be required to obtain a permit under the provisions of Section 9 for the alteration of the pre-existing non-conforming structure." A true and accurate copy of the letter from the Saugus Town Counsel, John J. Vasapolli, dated February 19, 2004, is attached hereto as Exhibit C.

25. In the legal opinion he provided, the Saugus Town Counsel expressed that the special permit sought by Omnipoint for use "on an already existing power transmission line support pole as the proposed alteration to the existing use is very minimum in nature".

26. After Omnipoint submitted its application, the Zoning Board conducted two hearings on Omnipoint's application.

27. Omnipoint presented evidence at the hearings regarding the gap in its coverage and its corresponding need for the addition of its antennas to Nepco Pole #19 and of its equipment cabinets at the base of the pole in order to meet its customers needs, as well as evidence of the minimal impact upon the neighborhood that its proposal would entail. Additionally, Omnipoint presented evidence of the lack of alternative sites in the area that would allow it to provide seamless, uninterrupted service to its customers.

28. Under the By-Laws, wireless telecommunications towers are not permitted in residential zoning districts. Nepco Pole #19 is a unique existing structure in the residential zoning district of sufficient height to enable Omnipoint to fill its significant gap in coverage.

29. On March 11, 2004, the Zoning Board voted to deny Omnipoint's request for a special permit, concluding, without specific grounds for its denial, that the "proposed expansion would be substantially more detrimental to the neighborhood than the existing non-conformity". The Zoning Board, having effectively denied Omnipoint the right to modify Nepco Pole #19 by denying Omnipoint's application for a special permit, did not specifically act upon Omnipoint's application for variances from Article XIV of the By-Laws. A true and accurate copy of the Zoning Board's decision on Omnipoint's application is attached hereto as Exhibit D.

## COUNT I - Violation of the Telecommunications Act of 1996

30. Omnipoint hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

31. Article VI, Clause 2, of the United States Constitution, commonly known as the Supremacy Clause, provides, in relevant part, that "[t]his Constitution and the Laws of the United States which shall be made in Pursuance thereof... shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

32. The Act governs the regulation of the placement, construction, and modification of personal wireless service facilities and, under the Supremacy Clause, preempts state laws and municipal ordinances or by-laws affecting such facilities to the extent that such laws, ordinances, and by-laws conflict with the Act.

33. Omnipoint's application for a special permit constitutes a request to provide "personal wireless services" within the meaning of the Act, and, as such, are entitled to the protection of the Act.

34. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii): "Any decision by a State of local government or instrumentality thereof to deny a request to place, construct or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

35. Omnipoint's application for a special permit to modify a pre-existing non-conforming use fulfilled all criteria required by the By-Laws in order to receive a Special Permit.

36. Moreover, Omnipoint's request for a special permit constituted a minimal alteration to an electric power transmission support pole and was not, in any way, an alteration to a pre-existing, non-confirming use or structure that would be "substantially more detrimental to the neighborhood than the existing use".

37. Defendants have failed to meet their burden of producing substantial evidence supporting the Zoning Board's denial of Omnipoint's application for a special permit.

38. Consequently, the Zoning Board's decision violated the Act's prohibition on state or local governments denying the placement, construction and modification of personal wireless service facilities without substantial evidence and a written record. 47 U.S.C. § 332(c)(7)(B)(iii).

39. In light of the foregoing, the Zoning Board's action is in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis.

40. Pursuant to 47 U.S.C. § 332(c)(7)(B), the "regulation of the placement, construction and modification of personal wireless service facilities by any State or local government or instrumentality thereof …(II)shall not prohibit or have the effect of prohibiting the provision of personal wireless services".

41. Omnipoint has established that the denial of its request for a special permit to modify Nepco Pole #19 by flush-mounting three (3) panel antennas, installed so as not to exceed the sixty-four foot height Nepco Pole #19, and building a small, fenced-in area housing equipment cabinets at the base of said pole would result in a significant gap in its provision of wireless communication services to its customers and that there are no alternative sites within the affected residential area on or from which it may otherwise fill its coverage gap.

42. Consequently, the Zoning Board's decision violated the Act's requirement that state or local governments not prohibit or effectively prohibit the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(II).

43. Accordingly, the Court should exercise its power to issue an order commanding the Zoning Board to grant the special permit for which Omnipoint applied, and, to the extent necessary, to grant the variances for which Omnipoint applied as well.

## COUNT II - Violation Of The Civil Rights Act, 42 U.S.C. § 1983

44. Omnipoint hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 43 above as if fully set forth herein.

45. Title 42 U.S.C. § 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in the action at law, suit in equity, or other proper proceeding for redress."

46. The Zoning Board acted under color of law in denying Omnipoint's applications for variances and a special permit to alter a pre-existing non-conforming use and structure.

47. Defendants violated the rights and privileges of Omnipoint under the Telecommunications Act. The defendants therefore acted in violation of Omnipoint's rights as secured by 42 U.S.C. § 1983.

48. Omnipoint has incurred financial damage as a result of the defendants' denial of its lawful request for variances and a special permit to modify a pre-existing, non-conforming use and structure.

**WHEREFORE,** Omnipoint respectfully requests the following relief as against the defendants:

1. An expedited review of the matters set forth in this Complaint;

2. An injunction mandating that the Zoning Board grant approval of Omnipoint's request for a special permit to modify a pre-existing, non-conforming use and structure; and, to the extent this Court deems necessary, an injunction mandating that the Zoning

Board grant approval of Omnipoint's request for variances from Article XIV of the By-Laws;

3. An injunction and order of mandamus directing the Town, through its officers and agents, to issue a building permit for flush-mounting antennas on Nepco Pole #19 and construction of fenced-in equipment cabinets at the base of said pole;

4. A judgment that the defendants' actions violated the Act and are therefore void and invalid;

5. An award of Omnipoint's damages caused by defendants' violation of the Federal Telecommunications Act of 1996;

6. An award of Omnipoint's damages caused by defendants' violation of 42 U.S.C. § 1983;

7. An award of Omnipoint's costs of suit herein, including reasonable attorneys' fees; and

8. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

OMNIPOINT HOLDINGS, INC.

By its attorneys,

_____
William A. Worth, Esq., BBO #544086
Craig M. Tateronis, Esq., BBO #553628
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109-1024
Tel: (617) 456-8000
Fax: (617) 456-8100

Date: April 12, 2004