# *ZONING BY-LAWS*

of the

# TOWN OF SAUGUS

## MASSACHUSETTS



Incorporated 1815

**June 1999**

ZONING BY-LAWS TOWN OF SAUGUS

# TABLE OF AMENDMENTS

| Date Adopted | Art. # | Section(s) | Description of Amendment |
|---|---|---|---|
| 5/2/94 | VII | 7.5 | Non-conforming Signs/Board of Appeals Approval Requirements |
| 5/2/94 | XII | 12.6 | Amend section 4(e) Site Plan Review public hearing requirements. |
| 5/2/94 | V | TOU | Private Day Nursery or Kindergarten use |
| 6/26/95 | XII | 12.6 | Redefinition of requirements for Site Plan Review |
| 1/22/96 | VII | 7.3 | Added use of temporary signage at Grabowski Field |
| 6/9/97 | VI | 6.5 | Modified/added Flood Plain District regulations 6.51, 6.53, 6.54 |
| 6/16/97 | IX | 9.7 | Added section 9.7, Non-conforming Two-Family homes in single family districts |
| 6/23/97 | VI | 6.8 | Changed min. Ft.$^2$ lot area in R-1 district to 20,000 Ft.$^2$ on Table and added note (7) |
| 6/23/97 | VI, VII | 6.8.7.3,7.4 | Table of use, Correction of typo's, Window Signs, Business Signs, |
| 6/23/97 | III, XIV | Def., 14 | Add definitions and Wireless Communications Regulations |
| 1/12/98 | III | Def. | Add definitions for Structure and Building |
| 1/12/98 | VI | 6.6 | Modify buffer strip requirement |
| 1/12/98 | XII | 12.6 | Added requirement for change of use of previously approved structure. |
| 1/12/98 | V | TOU | Modify section 2.A and Add section 2.B to include massage therapy |
| 1/12/98 | III | Def. | Added definition for adult use |
| 1/12/98 | V | TOU | Added Adult Uses |
| 1/12/98 | XII | 12.5 | Added Adult Uses section "C" |
| 6/29/98 | VI | Table | R3 min. lot area form 10,000 to 20,000 Ft.$^2$ |
| 6/29/98 | V | TOU | Principle Use, Residential in Industrial columns change from S1 to -- |
| 6/29/98 | VI | 6.9 | House Numbering |
| 6/29/98 | XII | 12.6 | Eliminate requirement for Site Plan Review in Residential Subdivisions |
| 6/29/98 | VI | 6.8 | Add Hillside Protection Special Permit Requirement |
| 10/19/98 | XII | 12.6 | Modified duties of Planning Board's Associate Member |
|  |  |  |  |
|  |  |  |  |

# TABLE OF CONTENTS

1.   ARTICLE I - TITLE, AUTHORITY, AND PURPOSE ................................................................. 5
  1.1.   TITLE .................................................................................................................. 5
  1.2.   AUTHORITY ........................................................................................................ 5
  1.3.   PURPOSE ............................................................................................................. 5

2.   ARTICLE II - INTERPRETATION AND APPLICATION ....................................................... 6
  2.1.   INTERPRETATION .............................................................................................. 6
  2.2.   APPLICATION ..................................................................................................... 6
  2.3.   EXISTING BUILDINGS AND LAND ................................................................... 6

3.   ARTICLE III - DEFINITIONS ............................................................................................... 7
  3.1.   GENERAL ............................................................................................................ 7

4.   ARTICLE IV - ESTABLISHMENT OF DISTRICTS ............................................................. 12
  4.1.   DIVISION INTO DISTRICTS .............................................................................. 12
  4.2.   ZONING MAP ..................................................................................................... 12
  4.3.   CHANGES TO MAP ............................................................................................ 12
  4.4.   BOUNDARIES OF DISTRICTS ........................................................................... 13
  4.5.   HIGH RISE BUSINESS AND INDUSTRIAL DISTRICTS .................................... 13
  4.6.   FLOOD PLAIN DISTRICTS ................................................................................ 13

5.   ARTICLE V - USE REGULATIONS .................................................................................... 14
  5.1.   APPLICABILITY OF USE REGULATIONS ......................................................... 14
  5.2.   PERMITTED USES .............................................................................................. 14
  5.3.   USES SUBJECT TO OTHER REGULATIONS ...................................................... 14
  5.4.   SPECIAL PERMIT BY BOARD OF APPEALS ..................................................... 14
  5.5.   SPECIAL PERMITS BY BOARD OF SELECTMEN .............................................. 14
  5.6.   TABLE OF USE REGULATIONS ......................................................................... 14
  5.7.   ENVIRONMENTAL PERFORMANCE STANDARDS .......................................... 15

6.   ARTICLE VI - DIMENSIONAL AND DENSITY REGULATIONS ........................................ 23
  6.1.   APPLICABILITY OF DIMENSIONAL AND DENSITY REGULATIONS ............... 23
  6.2.   TABLE OF DIMENSIONAL AND DENSITY REGULATIONS .............................. 23
  6.3.   REDUCTION OF LOT AREAS ............................................................................. 23
  6.4.   SEPARATION OF LOTS ...................................................................................... 23
  6.5.   BUILDINGS IN FLOOD PLAIN DISTRICTS ....................................................... 23
  6.6.   SCREENING AND BUFFERS - INDUSTRIAL OR BUSINESS DISTRICTS ........... 24
  6.7.   ACCESSORY BUILDINGS AND OTHER STRUCTURES ..................................... 25
  6.8.   OTHER GENERAL DIMENSIONAL AND DENSITY PROVISIONS ..................... 25
  6.9.   House Numbering ............................................................................................. 27

7.   ARTICLE VII - REGULATION OF ADVERTISING SIGNS AND BILLBOARDS ................. 29
  7.1.   PURPOSES .......................................................................................................... 29
  7.2.   DEFINITIONS ..................................................................................................... 29
  7.3.   GENERAL REQUIREMENTS - ALL SIGNS ......................................................... 30
  7.4.   SIGNS - ADDITIONAL REQUIREMENTS ........................................................... 31
  7.5.   PRE-EXISTING NON-CONFORMING SIGNS. ..................................................... 35
  7.6.   ADMINISTRATION AND ENFORCEMENT. ........................................................ 36

8.   ARTICLE VIII - OFF STREET PARKING AND LOADING REGULATIONS ........................ 37
  8.1.   OFF STREET PARKING REQUIREMENTS .......................................................... 37
  8.2.   OFF STREET LOADING AND UNLOADING REQUIREMENTS .......................... 37
  8.3.   EXISTING SPACES ............................................................................................. 37
  8.4.   COMPUTATION OF SPACES .............................................................................. 37

# TABLE OF CONTENTS

8.5.   COMBINED FACILITIES ................................................................... 37
8.6.   CONTINUANCE ............................................................................... 37
8.7.   LOCATION OF PARKING SPACES .................................................. 37
8.8.   LOCATION OF LOADING SPACES .................................................. 38
8.9.   USE OF MUNICIPAL LOTS FOR PARKING ...................................... 38

9.   **ARTICLE IX - NONCONFORMING USES, STRUCTURES AND LOTS** ............... **41**
9.1.   NONCONFORMITY BY INITIAL ENACTMENT OR AMENDMENT .......... 41
9.2.   EXTENSION AND ALTERATION ...................................................... 41
9.3.   RESIDENTIAL LOT OF RECORD ..................................................... 41
9.4.   RESTORATION .............................................................................. 41
9.5.   ABANDONMENT ............................................................................ 41
9.6.   MOVING ........................................................................................ 41
9.7.   NON-CONFORMING TWO-FAMILY HOMES IN SINGLE-FAMILY DISTRICTS ........................... 42

10.   **ARTICLE X - ADMINISTRATION AND ENFORCEMENT** ............................. **43**
10.1.   ADMINISTRATIVE OFFICER ........................................................ 43
10.2.   PERMIT REQUIRED ..................................................................... 43
10.3.   PREVIOUSLY APPROVED PERMITS ............................................. 43
10.4.   VIOLATIONS ............................................................................... 43
10.5.   PROSECUTION OF VIOLATION .................................................... 44
10.6.   BUILDING FEES .......................................................................... 44

11.   **ARTICLE XI - BOARD OF APPEALS** ...................................................... **45**
11.1.   ESTABLISHMENT OF BOARD OF APPEALS .................................. 45
11.2.   ADOPTION OF RULES ................................................................. 45
11.3.   POWERS ...................................................................................... 45
11.4.   APPEALS FOR SPECIAL PERMIT ................................................. 45

12.   **ARTICLE XII - SPECIAL PERMITS AND CONDITIONS** .............................. **46**
12.1.   SPECIAL PERMITS ...................................................................... 46
12.2.   PUBLIC HEARING ....................................................................... 46
12.3.   DECISIONS OF SPECIAL PERMIT GRANTING AUTHORITY ............ 46
12.4.   SPECIAL CONDITIONS ................................................................ 46
12.5.   SPECIAL PERMITS BY BOARD OF SELECTMEN ........................... 52
12.6.   SITE PLAN REVIEW .................................................................... 56

13.   **ARTICLE XIII - AMENDMENT AND VALIDITY** ......................................... **64**
13.1.   AMENDMENT ............................................................................... 64
13.2.   VALIDITY .................................................................................... 64

14.   **ARTICLE XIV - WIRELESS COMMUNICATIONS SERVICES DISTRICT** ........ **65**
14.1.   PURPOSE ..................................................................................... 65
14.2.   DESCRIPTION ............................................................................. 65
14.3.   USE RESTRICTIONS .................................................................... 65
14.4.   PROCEDURE FOR A SPECIAL PERMIT. ........................................ 67
14.5.   EXEMPTIONS. ............................................................................. 67

# 1. ARTICLE I - TITLE, AUTHORITY, AND PURPOSE

## 1.1. TITLE

This By-Law shall be known and may be cited as the "Zoning By-Law" of the Town of Saugus, Massachusetts", hereinafter referred to as "this By-Law".

## 1.2. AUTHORITY

This By-Law is adopted pursuant to the provisions of Chapter 40A of the General Laws of the Commonwealth of Massachusetts, and amendments thereto, herein referred to as the "Zoning Act".

## 1.3. PURPOSE

This By-Law is enacted for the following purposes: to lessen congestion in the streets; to conserve health; to secure safety from fire, flood, panic, and other dangers; to provide adequate light and air; to prevent over-crowding of land; to avoid undue concentration of population; to encourage the most appropriate use of land throughout the Town; to preserve and increase its amenities and to encourage an orderly expansion of the tax base by utilization, development and redevelopment of land. This By-Law shall give direction and regulate the use of land, buildings and structures in the interest of the present and future inhabitants of the Town of Saugus.

# 2. ARTICLE II - INTERPRETATION AND APPLICATION

## 2.1. INTERPRETATION.

The provisions of this By-Law shall be interpreted to be the minimum requirements adopted for the promotion of the health, safety, morals, or the general welfare of the Town of Saugus, Massachusetts; and except for the Zoning By-Laws of the Town of Saugus dated 1929 and all amendments thereto, the provisions of this By-Law are not intended to amend, annul, abrogate, or in any way impair or interfere with any lawfully adopted By-Law, covenants, regulations or rules. Whenever the regulations made under the Authority hereof differ from those prescribed by any statute, By-Law, or other regulation, that provision that imposes the greater restriction or the higher standard shall govern.

## 2.2. APPLICATION

Except as herein provided, or as specifically exempt by the Zoning Act, the provisions of this By-Law shall apply to the erection, construction, reconstruction, alteration, or use of buildings and structures or use of land. Except as herein provided, any existing conforming use, structure, or lot shall not by any action become nonconforming and any existing nonconforming use, structure, or lot shall not become further nonconforming.

## 2.3. EXISTING BUILDINGS AND LAND

This By-Law shall not apply to existing buildings and structures, nor to the existing use of any building or of land, to the extent to which it is legally used at the time of adoption of this By-Law, but it shall apply to any change or substantial extension of such use and to any structure and to any alteration of a building or structure to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent, except as hereinafter provided.

# 3. ARTICLE III - DEFINITIONS

## 3.1.  GENERAL

For the purpose of this By-Law, certain terms and words shall have the following meaning: words used in the present tense include the future; the singular number includes the plural, the plural the singular; the words "used" or "occupied" include the words "designed", "arranged", "intended", or "offered" to be used or occupied; the words "building", "structure", "lot", "land" or "premises" shall be construed as though followed by the words "or any portion thereof"; and the word "shall" is always mandatory and not merely directory. Terms and words not defined herein but defined in the State Building code or Subdivision Regulations shall have the meanings given therein unless a contrary intention clearly appears. Uses listed in the Table of Use Regulations under the classes Retail Service -- Comm. and Wholesale Transportation and Industrial shall be further defined by the Standard Industrial Classification Manual published by the U.S. Bureau of the Census.

**Abandonment:** The cessation of a nonconforming use as indicated by the visible or otherwise apparent intention of an owner to discontinue a nonconforming use of a structure or lot; or the replacement of a nonconforming use or structure by a conforming use or structure.

**Adult Bookstore:** An establishment having as a substantial or significant portion of its stock in trade books, magazines, and other matter which are distinguished as characterized by their emphasis depicting, describing or relating to sexual conduct or sexual excitement, as defined in MGL Chapter 272, Section 31.

**Adult Club:** An establishment having as a substantial or significant portion of its entertainment a person or persons performing in a state of nudity or distinguished by an emphasis on matter depicting, describing or relating to sexual conduct or sexual excitement, as defined in MGL Chapter 272, Section 31.

**Adult Theater:** An enclosed building use for presenting material distinguished by an emphasis on matter depicting, describing, or relating to sexual conduct or sexual excitement as defined in MGL Chapter 272, Section 31.

**Adult Use:** An Adult Bookstore, Adult Club, Adult Theater, Adult Video Store, and Adult Paraphernalia Store, as defined in this by-law.

**Adult Video Store:** An establishment having as a substantial or significant portion or its stock in videos other matters which are distinguished by emphasis on matter depicting, describing, or relating to sexual conduct or sexual excitement as defined in MGL Chapter 272, Section 31.

**Adult Paraphernalia Store:** An establishment having as a substantial or significant portion of its stock devices, objects, tools or toys which are distinguished or characterized by their association with sexual activity, including sexual conduct or sexual excitement as defined in MGL Chapter 272, Sec. 31.

**Apartment House:** A building designed, intended, or used as the home or residence of three or more families, each in a separate but attached dwelling unit, living independently of each other and who have a common right in halls, stairways and amenities.

**Basement:** A portion of a building, partly below grade, that has more than one-half of its height, measured from finished floor to finished ceiling, above the average finished grade of the ground adjoining the building. A basement is not considered a story unless its ceiling is six feet or more above the finished grade.

**Building:** An enclosed structure (see definition herein).

**Building, Accessory:** A detached building, the use of which is customarily incidental and subordinate to that of the principal building. All accessory buildings shall be located on the same lot as that occupied by the principal building, except in the case of buildings accessory to scientific research, development or related production.

**Building Area:** The aggregate of the maximum horizontal cross-section area of all buildings on lot exclusive of cornices, eaves, gutters, chimneys, unenclosed porches, bay windows, balconies and terraces, expressed as a percentage of total lot area.

## ZONING BY-LAWS TOWN OF SAUGUS

**Building, Attached:** A building having any portion of one or more walls in common with adjoining buildings.

**Building, Detached:** A building having open space on all sides.

**Building, Nonconforming:** A building lawfully existing at the time of adoption of this By-Law, or any subsequent amendment thereto, that does not conform to one or more of the applicable dimensional and density regulations for the district in which the building is located.

**Cellar:** A portion of a building, partly or entirely below grade, that has more than one half of its height measured from finished floor to finished ceiling, below the average established finished grade of the ground adjoining the building. A cellar is not deemed a story.

**Common Land:** A parcel or parcels of land area within the site designated for a Cluster or Multi-Density Apartment use, maintained and preserved for open use, and designed and intended for the use and enjoyment of residents of these developments, but not including parking areas, or public or private ways. Common land may contain structures and improvements as are necessary and appropriate for the recreational benefit and enjoyment of such residents.

**Conservation Easement:** A property interest that limits the future use of an area of land in order to retain it in its natural, scenic or open condition or in agricultural, farming or forest use.

**Contractors Yard:** An area of land used for the storage of material and/or equipment used in the construction industry (including highway and landscaping). For the purpose of this By-Law a single vehicle used by the owner for the storage of small items of material and equipment that are used on a day by day basis in carrying out his trade, and/or used by the owner for transportation purposes, shall not be classified as construction equipment.

**District:** A zoning district as established by Article IV of this By-Law.

**Driveway:** An open space, located on a lot, that is not more than 24 feet in width built for access to a garage, or off-street parking or loading space.

**Dwelling:** A privately or publicly owned permanent structure, whether owned by one or more persons or in condominium, that is occupied in whole or in part as the home residence or sleeping place of one or more persons. The terms "one-family", "two-family" or "multi-family" dwelling shall not include hotel, lodging house, hospital, membership club, mobile home, or dormitory.

**Dwelling, General Residence:** A building containing two dwelling units constructed (attached) on a single lot.

**Dwelling, Multi-family:** A building containing three or more dwelling units and including apartment house, garden apartment house and town houses.

**Essential Services:** Services provided by public utility or governmental agencies through erection, construction, alteration, or maintenance of gas, electrical, steam, or water transmission and distribution systems. Facilities necessary for the provision of essential services include poles, wires, mains, drains, sewers, pipes, conduits, cables, fire alarm boxes, police call boxes, traffic signals, hydrants and other similar equipment and accessories in connection therewith. Specifically excluded from this definition are buildings necessary for the furnishing of adequate service by such public utility or governmental agencies for the public health, safety or general welfare.

**Family:** One or more persons, including domestic employees, occupying a dwelling unit and living and cooking together as a single, non-profit housekeeping unit.

**Flood Line:** The limits of flooding from a particular body of water caused by a storm whose frequency of occurrence is once in twenty-five or more years as determined and certified by a registered professional engineer, qualified in drainage.

**Floodway:** The area subject to periodic flooding, the limits of which are determined by the flood line.

**Frontage:** The distance measured along the property line that divides a lot from a right-of-way, and between the points of intersection of the side lot lines and right-of-way. To be considered as frontage, this distance shall be continuous and must at all points have at least a minimum front yard depth (setback) required in the Table of Dimensional and Density Regulations for the district; same as Lot Width (see definition).

ZONING BY-LAWS TOWN OF SAUGUS

**Height:** The vertical distance from the average finished grade of the adjacent ground to the top of the structure of the highest roof beams of a flat roof, or the mean level of the highest gable or slope of a hip roof, but not to exceed ninety (90) feet.

**High Rise:** Any building that may have a height of greater than forty (40) feet.

**Home Occupation:** An accessory use that by custom has been carried on entirely within a dwelling unit, and is incidental and subordinate to the dwelling use and that shall not occupy more than 30 percent of the gross floor area or 700 square feet, whichever is less, of the dwelling units used. In connection with such use, there is to be kept no stock in trade nor commodities sold on the premises. Such use shall be carried on by the occupants of the dwelling unit with not more than one nonresident employee, and shall not in any manner change the residential character of the building.

**Hospital:** A building providing 24-hour in-patient services for the diagnosis, treatment or other care of human ailments including a sanitarium, sanitarium clinic, rest home, nursing home and convalescent home.

**Hospital, Veterinary:** A building providing for the diagnosis and treatment of ailments of animals other than human, including facilities for overnight care.

**Hotel:** A building or any part of a building containing rooming units without individual cooking facilities for transient occupancy and having a common entrance or entrances including an inn, motel, motor inn and tourist court, but not including a boarding house, lodging house or rooming house.

**Junk:** Any worn out, castoff, or discarded articles or material that is ready for destruction or has been collected or stored for salvage or conversion to some use.

**Junk Yard:** The use of more than 200 square feet of the area of any lot, whether inside or outside of a building, or the use of any portion of any lot that joins any street, for the storage, keeping or abandonment of junk.

**Loading Space:** An off-street space used for loading or unloading, not less than 14 feet in width, 45 feet in length and 14 feet in height, and containing not less than 1,300 square feet including both access and maneuvering area.

**Lodging Unit:** One or more rooms for the use of one or more individuals not living as a single housekeeping unit and not having cooking facilities. A "Lodging Unit" shall include rooms in boarding houses, tourist houses, or rooming houses.

**Lot:** An area or parcel of land with definite boundaries, used or available for use, as the site of one or more buildings. For purpose of this By-Law, a lot shall have boundaries identical with those recorded in the Essex County Registry of Deeds.

**Lot, Corner:** A lot at the point of intersection of and abutting on two or more intersecting streets, the interior angle or intersection of the street lot lines, or in case of a curved street, extended lot lines, being not more than 135 degrees.

**Lot Depth:** The mean horizontal distance between the front lot line and the rear lot line.

**Lot Line, Front:** The property line dividing a lot from a street (right-of-way) or designated way.

**Lot Line, Rear:** The lot line opposite from the front lot line.

**Lot Line, Side:** Any lot line not a front or rear lot line.

**Lot, Nonconforming:** A lot lawfully existing that is not in accordance with all provisions of this By-Law.

**Lot Width:** The horizontal distance between the side lot lines as measured at the minimum front yard depth required by this By-Law; same as Frontage (see definition).

**Membership Club:** A social, sports or fraternal association or organization that is used exclusively by members and their guests.

**Open Space:** The space on a lot unoccupied by buildings or structures, unobstructed to the sky by man-made objects other than walks, swimming pools, terraced areas, and tennis courts, not devoted to streets, driveways, off-street parking or loading spaces and expressed as a percentage of total lot area.

## ZONING BY-LAWS TOWN OF SAUGUS

**Parking Space:** An off-street space of at least 10 feet in width and 20 feet in length, having an area not less than 300 square feet, that includes access and maneuvering space, whether inside or outside a structure for exclusive use as a parking stall for one motor vehicle. Minimum space dimensions of nine (9) feet in width and eighteen (18) feet in length are permitted on lots with at least twenty percent (20%) non-wetland *, Open Space.

\* As defined by Massachusetts General Laws Chapter 131, Section 40.

**Quarrying:** The business or occupation of extracting stone from an open excavation. Quarrying does not include the excavation and removal of sand and gravel.

**Setback:** The shortest horizontal distance from the front lot line to the nearest building wall or part other than projecting eaves and bay windows. Open and enclosed piazzas shall constitute a part of the house or structure.

**Sign:** See definitions under Article VII - Section 7.2: Signs.

**Street:** A way that is over 20 feet in right-of-way width that is dedicated or devoted to public use by legal mapping or by any other lawful procedure.

**Structure:** A combination of materials, or parts thereof, assembled at a fixed location to give support or shelter, and further defined in the State Basic Building Code.

**Structure, Nonconforming:** A structure lawfully existing that does not conform to one or more provisions of this ordinance.

**Swimming Pool, Residential:** A body of water contained in an artificial or semi-artificial receptacle, whether in or above ground, or created by artificial means from a natural water course, and all appurtenances, appliances, and other facilities for its operation or use, used or intended to be used for swimming, wading or recreational bathing, but not including pools incapable of containing a depth of water exceeding twenty-four (24) inches at any point.

**Town House:** A row of at least three one-family attached dwelling units whose side walls are separated from other dwelling by a fire wall or walls. Each unit in the row may be owned by a separate owner if in condominium.

**Trailer:** A highway vehicle designed to be hauled.

**Use:** The purpose for which a structure or lot is arranged, designed, or intended to be used, occupied or maintained.

**Use, Accessory:** A use incidental and subordinate to the principal use of a structure or lot, or a use, not the principal use, that is located on the same lot as the principal structure. Uses accessory to scientific research, scientific development or related production do not have to be located on the same lot as the principal use. Accessory use by area shall be interpreted not to exceed 40 percent of the area of the total use of the structure and/or lot on which it is located.

**Use, Nonconforming:** A use lawfully existing that does not conform to one or more provisions of this ordinance.

**Use, Principal:** The main or primary purpose for which a structure or lot is designed, arranged, or intended, or for which it may be used, occupied or maintained under this ordinance. Any other use within the main structure or the use of any other structure or land on the same lot and incidental or supplementary to the principal use and permitted under this ordinance shall be considered an accessory use.

**Use, Substantially Different:** A use that, by reason of its normal operation, would encourage readily observable differences in patronage, service, appearance, noise, employment or similar characteristics from the use to which it is being compared.

**Variance:** Such departure from the terms of this By-Law as the Board of Appeals, upon petition or appeal in specific cases, is empowered to authorize under the terms of Chapter 40A, Section 10.

**Wireless communications facility:** shall mean a wireless communication monopole, including antennas and accessory structures, if any, that facilitates the provision of wireless communications services.

**Wireless communications services:** shall mean the provision of the following types of services: cellular telephone service, personal communications and enhanced specialized mobile radio service.

## ZONING BY-LAWS TOWN OF SAUGUS

**Yard:** A portion of a lot, upon which the principal building is situated, unobstructed artificially from the ground to the sky, except as otherwise provided herein. A court shall not be considered to be a yard or any part thereof.

**Yard, Front:** A yard extending for the full width of the lot between the front line of the nearest building wall and the front lot line.

**Yard, Rear:** A yard, except by an accessory structure or accessory use as herein permitted, extending for the full width of the lot between the rear line of the building wall and the rear lot line.

**Yard, Side:** Yard extending for the full length of a building between the nearest building wall and the side lot line.

# 4. ARTICLE IV - ESTABLISHMENT OF DISTRICTS

## 4.1. DIVISION INTO DISTRICTS

The Town of Saugus, Massachusetts, is hereby divided into twelve (12) Zoning Districts to be designated as follows:

| FULL NAME AND CLASS | REFERENCE |
|---|---|
| *Residential A - Single Family | R-1 |
| *Residential B - Single Family | R-2 |
| Residential - General, Two Family | R-3 |
| Residential- Multi Density, Apartment | R-4 |
| Business - Neighborhood | B-1 |
| High-rise Business & Industrial | B-2 |
| Business A - Special | B-3 |
| Industrial | I |
| Industrial - Light | I-1 |
| Industrial - Heavy | I-2 |
| Flood Plain | F.P. |
| Flood Plain - Fringe | F.P.-F. |

    *Residential A - East of Broadway

    *Residential B - West of Broadway

## 4.2. ZONING MAP

The location and boundaries of the Zoning Districts are hereby established as shown on a map titled "Zoning Map of the Town of Saugus, Massachusetts," dated February 28, 1977, that accompanies and is hereby declared to be a part of this By-Law. The authenticity of the Zoning Map shall be identified by the signature of the Town Clerk, and the imprinted seal of the Town under the following words: "This is to certify that this is the Zoning Map of the Town of Saugus, Massachusetts, which was approved by the Town Meeting on May 23, 1977."

## 4.3. CHANGES TO MAP

Any change in the location of boundaries of a Zoning District hereafter made through amendments of this By-Law shall be indicated by the alteration of such map, such changes to be dated and authenticated as prescribed in Section 4.2. The Map, thus altered, is declared to be part of the By-Law as amended. The Building Inspector shall be responsible for making changes to the Zoning Map. Such changes shall be made within thirty (30) days of final approval of amendments. The Zoning Map shall be drawn to a scale of 1" equals 500 feet, and shall be located in the Office of the Building Inspector. Photographic reductions of the large-scale map may serve as copies of the Zoning Map.

## 4.4.  BOUNDARIES OF DISTRICTS

Where any uncertainty exists with respect to the boundary of any district as shown on the Zoning Map, the following rules apply:

**A.**  Where a boundary is indicated as a street, railroad, watercourse or other body of water, it shall be construed to be the centerline or middle thereof, or where such boundary approximates a town boundary, then to the limits of the town boundary.

**B.**  Where a boundary is indicated as following approximately or parallel to a street, railroad, watercourse, or other body of water, it shall be construed to be parallel thereto and at such distance therefrom as shown on the Zoning Map. If no dimension is given, such distance shall be determined by the use of the scale shown on the Zoning Map.

**C.**  Where a dimensioned boundary coincides within ten feet or less with a lot line, the boundary shall be construed to be the lot line.

**D.**  Where a boundary is indicated as intersecting the centerline of a street, railroad, watercourse or other body of water, it shall be construed to intersect at right angles to said centerline, or in the case of a curved centerline, at right angles to the tangent to the curve at the point of intersection.

## 4.5.  HIGH RISE BUSINESS AND INDUSTRIAL DISTRICTS

Land on Broadway, otherwise known as Routes 1 and 99, including land that is presently zoned for business or industry that does abut business or industrial land on said Broadway and has direct access to said Broadway. Lands within this district will be designated as B-2 on Zoning Map.

## 4.6.  FLOOD PLAIN DISTRICTS

Lands in Saugus that are subject to seasonable and periodic flooding that must be developed, preserved, and maintained to assure the natural flow of watercourses. These are made up of the following categories:

**A.**  FLOOD PLAIN DISTRICT - Lands that are shown as Floodway on the FEMA Flood Boundary and Floodway Map dated January 19, 1983, as amended; and lands shown as Flood Plain on the official Zoning Map of the Town of Saugus, as amended.

**B.**  FLOOD PLAIN - FRINGE - Lands in Saugus shown as Zones A, A-2, A-3, A-4, A-7 and A-9 on the Town of Saugus Flood Insurance Rate Map dated January 19, 1983, as amended, except for those that are included in the Flood Plain District as defined in SECTION 4.6A above.

All maps shall be on file with the Town Clerk, Building Inspector and Planning Board. The Flood Plain Districts shall be considered as overlying other district zoning. Refer to Article XII for Special Permit requirements.

# 5.  ARTICLE V - USE REGULATIONS

## 5.1.  APPLICABILITY OF USE REGULATIONS

Except as provided in the Zoning Act or in this By-Law, no building, structure or land shall be used except for the purposes permitted in the district as described in this Article. Any use not listed shall be construed to be prohibited.

## 5.2.  PERMITTED USES

In the following Table of Use Regulations, the uses permitted by right in the district are designated by the letter "P", but it shall not be a permitted use unless one of three following conditions are met: (1) the proposed location abuts on a street that has been laid out and accepted as a traveled way or, (2) the proposed location abuts on a street that has been built to subgrade so that it is passable for fire apparatus and other vehicular traffic, or (3) the proposed location abuts on a street or way in which there is public sewer and water. In any event, no Building Permit shall be issued for any lot unless water or public sewer or adequate private sewer systems are available. Those uses that may be permitted by special permit in the district, in accordance with Articles XI and XII, are designated by the letter "S1" or "S2". Uses designated (--) shall not be permitted in the district. Uses allowed under the basic zoning districts on this table shall also be allowed in the Flood Plain - Fringe (F.P.-F.) and are designated by an asterisk (*).

## 5.3.  USES SUBJECT TO OTHER REGULATIONS

Uses permitted by right or by special exception shall be subject, in addition to use regulations, to all other provisions of the By-Law and shall comply with all of the provisions of the Massachusetts State Building Code or of local By-Laws and Codes that may be more restrictive.

## 5.4.  SPECIAL PERMIT BY BOARD OF APPEALS

Those uses designated as "S1" shall be subject to provisions of Article XI and XII.

## 5.5.  SPECIAL PERMITS BY BOARD OF SELECTMEN

Those uses designated as "S2" shall be subject to provisions of Article XI and XII.

## 5.6.  TABLE OF USE REGULATIONS

See table on accompanying pages that is declared to be a part of this By-Law. Any use permitted under l-l shall be allowed in an Industrial District.

ZONING BY-LAWS TOWN OF SAUGUS

## 5.7.  ENVIRONMENTAL PERFORMANCE STANDARDS

Any use permitted by right or special permit in any district shall not be conducted in a manner to cause any dangerous, noxious, injurious or otherwise objectionable hazard; noise or vibration, smoke, dust, odor or other objectionable pollution; glare, conditions conducive to breeding of insects, rodents or other vermin, substances, conditions, or elements to an extent so as to adversely affect nearby neighborhoods. Minimum acceptable standards shall be as follows:

A.  Emission shall be completely and effectively confined within the building, or so regulated as to prevent any nuisance, hazard, or other disturbance from being perceptible (without the use of instruments) at any lot line of the site location.

B.  All use and storage of flammable materials shall be confined and maintained in accordance with the strict provisions set forth by the Chief of the Fire Department acting in accordance with duly established fire prevention regulations, codes and standards.

C.  Any emission of visible smoke shall meet the then current color standards of the Massachusetts Department of Environmental Quality Engineering Division of Air Pollution, and in any event, no emission of smoke of a shade darker than No. 1 on the Ringlemann Smoke Chart as published by the United States Bureau of Mines shall be permitted.

D.  There shall be no emission of "fly ash" that can cause damage to the health of humans, animals or vegetation, or that can cause excessive soiling. In no event shall emission of any solid or liquid particles in concentration exceeding 0.2 grams per cubic foot of conveying gas or air be permitted.

E.  The maximum permissible sound pressure level at the closest residential lot line, shall not exceed 69 decibels between the hours of 8:00 a.m. and 7:00 p.m. and 61 decibels between 7:00 p.m. and 8:00 a.m. as measured on a frequency band of 125 cycles per second using a general purpose sound level meter complying with the provisions of the American National Standards Institute, properly calibrated and operated on the "A" weighing network. This regulation shall not apply to:

    1)  Transient noises of moving vehicles.

    2)  Noises of safety signals, warning devices, and pressure relief valves.

    3)  Noises emanating from temporary construction and maintenance activities between 7:00 a.m. and 7:00 p.m.

F.  No direct or sky reflected glare whether from flood lights or from high temperature processes shall be permitted when it is determined to be hazardous to human health and welfare or obnoxious.

This regulation shall not apply to street lighting or other utilities that are essential for public safety.

G.  The Building Inspector may require such information, data and testing to be performed and supplied at the owners or developers expense in order to determine the findings of compliance.

## ZONING BY-LAWS TOWN OF SAUGUS

## TABLE OF USE AND PARKING REGULATIONS

| Principal Use | Residential | | | | Business | | | Industrial | | Flood Plain | Flood Plain Fringe | Parking Code |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | R-1 | R-2 | R-3 | R-4 | B-1 | B-2 | B-3 | I-1 | I-2 | F.P. | F.P.-F | See Section 8.11 |
| **RESIDENTIAL** | | | | | | | | | | | | |
| 1. One Family Dwelling | P | P | P | -- | -- | -- | -- | -- | -- | -- | * | A |
| 2. Two Family Dwelling | S1 | S1 | P | -- | -- | -- | -- | -- | -- | -- | * | A |
| 3. Temp. Mobile Home, up to 12 mos, for owner-resident of home destroyed by fire or other natural cause | P | P | P | | | | | | | -- | * | A |
| 4. Multi Family Dwelling - Apartment House, Town House | | | | P | | | | | | -- | * | B |
| 5. Planned Multi-Density Residential - Apartment House, Town House | | | | S1 | | | | | | | * | B |
| 6. Residential One-Family Planned Cluster | S1 | S1 | | | | | | | | | * | A |
| 7. Lodging House - Roomers (not more than four roomers) | S1 | S1 | S1 | | | | | | | | * | C |
| **COMMUNITY FACILITIES** | | | | | | | | | | | | |
| 1. Church, School, Public Libraries, Public Museums, Parish Houses, Municipal or Church Recreational Buildings, Governmental Buildings (except garage), Non-Profit Day Nursery or Kindergarten | P | P | P | P | P | P | P | P | P | -- | * | D,N,O |
| 2. Parks, Playgrounds, Municipal Police and Fire Stations, Water Towers | P | P | P | P | P | P | -- | P | P | -- | * | O,S |
| 3. Commercial Golf Course | P | P | P | P | P | P | -- | P | P | S1 | * | S |
| 4. Private Club (not conducted for profit) | P | P | P | P | P | P | -- | P | P | -- | * | S |

-16-

June 1999

## ZONING BY-LAWS TOWN OF SAUGUS

## TABLE OF USE AND PARKING REGULATIONS

| Principal Use | District | | | | | | | | | Flood Plain F.P. | Flood Plain Fringe F.P.-F | Parking Code See Section 8.11 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Residential | | | | Business | | | Industrial | | | | |
| | R-1 | R-2 | R-3 | R-4 | B-1 | B-2 | B-3 | I-1 | I-2 | | | |
| **COMMUNITY FACILITIES CONT'D** | | | | | | | | | | | | |
| 5. Passenger Stations | P | P | P | P | P | P | -- | P | P | -- | * | -- |
| 6. Cemeteries, Hospitals, Sanitariums, Nursing Homes, Rest Homes, Philanthropic Inst. | S2 | S2 | S2 | S2 | S2 | S2 | -- | S2 | S2 | -- | * | C,L,S |
| 7. Private Stables | S2 | S2 | S2 | S2 | S2 | S2 | -- | S2 | S2 | -- | * | -- |
| 8. Telephone Exchanges (Provided no service yards) | S2 | S2 | S2 | S2 | S2 | S2 | -- | S2 | S2 | -- | * | P |
| 9. Private Day Nursery or Kindergarten | P | P | P | P | P | P | P | P | P | -- | * | T |
| 10. Town Equipment Garage | S2 | S2 | S2 | -- | S2 | S2 | -- | -- | -- | -- | * | S |
| 11. Municipal Parking Lot or Structures | -- | -- | -- | -- | P | P | -- | P | P | -- | * | -- |
| 12. Facilities for Essential Services (streets, drains, bridges, etc.) | P | P | P | P | P | P | P | P | P | P | * | -- |
| 13. Private Utility, Transmission Lines, Sub-station or Similar Facility or Building | S2 | S2 | S2 | S2 | S2 | S2 | -- | S2 | S2 | S2 | * | -- |

ZONING BY-LAWS TOWN OF SAUGUS

## TABLE OF USE AND PARKING REGULATIONS

| Principal Use | District | | | | | | | | | Flood Plain F.P. | Flood Plain Fringe F.P.-F | Parking Code See Section 8.11 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Residential | | | | Business | | | Industrial | | | | |
| | R-1 | R-2 | R-3 | R-4 | B-1 | B-2 | B-3 | I-1 | I-2 | | | |
| **AGRICULTURE** | | | | | | | | | | | | |
| 1. Farms: Agriculture, Horticulture, including Facilities | P | P | P | P | P | P | P | P | P | P | * | S |
| 2. Greenhouses, Nurseries and Truck Gardens, Stands for Wholesale and Retail Sales - if less than 5 Acres | S2 | S2 | S2 | S2 | S2 | S2 | -- | S2 | S2 | S2 | * | S |
| 3. Forestry and Nurseries | P | P | P | P | P | P | P | P | P | P | * | -- |
| **RETAIL SERVICE - COMM.** | | | | | | | | | | | | |
| 1. Retail Stores and Shops for Custom Work or Making of Articles to be Sold at Retail on Premises | -- | -- | -- | -- | P | P | -- | P | P | -- | * | E |
| 2. Retail Establishments Selling Principally Convenience Goods and Services including, but not limited to: Food, Drugs, and Proprietary Goods | -- | -- | -- | -- | P | P | -- | P | P | -- | * | E |
| 2a. Health Clubs, Public Baths, Sauna Baths, Personal Fitness Establishments, but not including any uses under Subsection 2.b below | -- | -- | -- | -- | S2 | S2 | -- | S2 | S2 | -- | * | -- |
| 2b. Places of business for Massage Therapy, Bodywork and Movement Education as defined and regulated by the Saugus Board of Health | -- | -- | -- | -- | S2 | S2 | -- | S2 | S2 | -- | * | -- |

ZONING BY-LAWS - OWN OF SAUGUS

## TABLE OF USE AND PARKING REGULATIONS

| Principal Use | District | | | | | | | | | Flood Plain F.P. | Flood Plain Fringe F.P.-F | Parking Code See Section 8.11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Residential | | | | Business | | | Industrial | | | | |
| | R-1 | R-2 | R-3 | R-4 | B-1 | B-2 | B-3 | I-1 | I-2 | | | |
| **RETAIL SERVICE - COMM. (Cont.)** | | | | | | | | | | | | |
| 3. Professional Offices for Engineers, Surveyors, Lawyers, Architects, Accountants, Doctors, of Medicine, Osteopathy, Banks, Real Estate, Insurance, Mfg. Representative, Brokers, Travel Agents, and Headquarters for Non-Political, Civic, Cultural or Professional Societies and Organizations | -- | -- | -- | -- | P | P | S1 | P | P | -- | * | F,H |
| 4. Place of Business for: Blacksmith, Building, Carpenter, Contractor, Mason, Upholsterer, Plumber, Tinsmith, Roofer, Undertaker, Contractors Yards, Laundry Facility of any kind, Pet Care or Pet Sales and uses similar to those listed | -- | -- | -- | -- | S2 | S2 | -- | S2 | S2 | -- | * | F |
| 5. Restaurants and other Places Serving Foods, Motels and Hotels | -- | -- | -- | -- | P | P | -- | P | P | -- | * | D |
| 6. Theaters, Bowling Alleys, Billiard Rms., Skating Rinks, and similar places of Amusement | -- | -- | -- | -- | S2 | S2 | -- | S2 | S2 | -- | * | D |
| 7. Gasoline and Oil Stations, Garages for Storage and Repairs, Auto Showrooms and Lots, and Commercial Stables | -- | -- | -- | -- | S2 | S2 | -- | S2 | S2 | -- | * | E |
| 8. Commercial Trailers and Storage Containers - if used in Excess of 24 hours 5/3/93 | -- | -- | -- | -- | P | P | -- | P | P | -- | * | -- |
| 9. One-Story Mini-Storage Facility | -- | -- | -- | -- | -- | S1 | -- | S1 | S1 | -- | -- | -- |
| 10. Adult Uses (see Def. & Sec. 12.5C) | -- | -- | -- | -- | -- | S2 | -- | -- | -- | -- | * | S |

-19-

June 1999

## ZONING BY-LAWS TOWN OF SAUGUS

# TABLE OF USE AND PARKING REGULATIONS

| Principal Use | District | | | | | | | | | | Flood Plain | Flood Plain | Parking Code |
| | Residential | | | | Business | | | Industrial | | | | | |
| | R-1 | R-2 | R-3 | R-4 | B-1 | B-2 | B-3 | I-1 | I-2 | Flood Plain F.P. | Fringe F.P.-F | See Section 8.11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **WHOLESALE TRANSPORTATION AND INDUSTRIAL** | | | | | | | | | | | | |
| 1. Building Material, Fuel, Feed, Ice Establishments, Junk Yards, Automobile Repair and Sales | -- | -- | -- | -- | -- | S2 | -- | S2 | S2 | -- | * | J,S |
| 2. Light Manufacturing, Employing Electricity and/or other Unobjectionable Motive Power, using hand labor and/or Unobjectionable Machinery or Process | -- | -- | -- | -- | -- | S2 | -- | S2 | S2 | -- | * | J |
| 3. Laboratory Engaged in Experimental or Testing Research | -- | -- | -- | -- | -- | -- | -- | -- | S2 | -- | * | J |
| 4. Plant for Manufacture of Electrical or Electronic Devices, Appliances, Apparatus or Supplies; Plant for Mfg. of Medical, Dental Drafting Supplies, Optical Goods or other Precision Instruments | -- | -- | -- | -- | -- | -- | -- | -- | S2 | -- | * | J |
| 5. Plant for disposal and/or processing and storing of waste material and refuse but specifically excluding sewage sludge or any material containing sewage sludge. Such uses will not be allowed to any preexisting nonconforming use. | -- | -- | -- | -- | -- | -- | -- | -- | S2 | -- | * | J |
| 6. Storage Warehouses for Building Supplies, Shop Supplies, Contractors Equip., Furniture, or any Mfg. Activities listed herein before 3/2/93 | -- | -- | -- | -- | -- | -- | -- | -- | S2 | -- | * | J |

ZONING BY-LAW   TOWN OF SAUGUS

## TABLE OF USE AND PARKING REGULATIONS

| Principal Use | District | | | | | | | | | Flood Plain F.P. | Flood Plain Fringe F.P.-F | Parking Code See Section 8.11 |
| | Residential | | | | Business | | | Industrial | | | | |
| | R-1 | R-2 | R-3 | R-4 | B-1 | B-2 | B-3 | I-1 | I-2 | | | |
| **WHOLESALE TRANSPORTATION AND INDUSTRIAL (Cont.)** | | | | | | | | | | | | |
| 7. Removal of Earth Material other than for Residential Development purposes; Processing and Treating of Raw Material | -- | -- | -- | -- | -- | S2 | -- | S2 | S2 | -- | * | J |
| 8. Railroad Yards, Motor Freight Terminals | -- | -- | -- | -- | -- | -- | -- | S2 | S2 | -- | * | Q |
| **MISCELLANEOUS** | | | | | | | | | | | | |
| 1. Conservation of Water Plants and Wildlife | P | P | P | P | P | P | P | P | P | P | * | -- |
| 2. Pony Rides, Circus, Fairs, Carnivals, and Similar Events, but not including Permanent Structures | -- | -- | -- | -- | S1 | S1 | -- | S1 | S1 | S1 | * | S |
| 3. Temporary Refreshment Stand or Stands for Sale of Produce Grown on Premises | -- | -- | -- | -- | S1 | S1 | -- | S1 | S1 | S1 | * | -- |
| 4. Outdoor Recreation - Including Play Areas, Nature Study, Boating, Fishing & Hunting where legally permited | -- | -- | -- | P | -- | -- | -- | -- | -- | P | * | -- |
| 5. Temporary Trailer (construction & storage) and Storage Containers | -- | -- | -- | P | P | -- | P | P | -- | -- | * | -- |

ZONING BY-LAWS TOWN OF SAUGUS

# TABLE OF USE AND PARKING REGULATIONS

| ACCESSORY USE | District | | | | | | | | | Flood Plain F.P. | Flood Plain Fringe F.P.-F | Parking Code See Section 8.11 |
| | Residential | | | | Business | | | Industrial | | | | |
| | R-1 | R-2 | R-3 | R-4 | B-1 | B-2 | B-3 | I-1 | I-2 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Home Occupation | S1 | S1 | S1 | S1 | -- | -- | -- | -- | -- | -- | * | T |
| 2. Garages for not more than four (4) cars | P | P | P | -- | -- | -- | -- | -- | -- | -- | * | -- |
| 3. Tool Sheds, Summer House, Outdoor Fireplaces, Fruit Arbors, Porches | P | P | P | P | -- | -- | -- | -- | -- | -- | * | -- |
| 4. Swimming Pools | P | P | P | P | P | P | -- | P | P | -- | * | -- |
| 5. Garage for Storage of Vehicles Incidental to Operation of Business, Clubs, Motels | -- | -- | -- | P | P | P | -- | P | P | -- | * | -- |
| 6. Accessory Mfg. use, of Light Mfg. nature incidental to a permitted use, and where product is customarily sold on premises directly to a customer | -- | -- | -- | -- | P | P | -- | P | P | -- | * | -- |
| 7. Accessory Signs Subject to provisions of Article VII | P | P | P | P | P | P | P | P | P | S1 | * | -- |
| 8. Accessory Off-street Parking Subject to Article V | P | P | P | P | P | P | P | P | P | -- | * | -- |
| 9. Accessory Uses to Scientific Research and Development and Related Production Activity | S2 | S2 | S2 | S2 | S2 | S2 | S2 | S2 | S2 | -- | * | -- |
| 10. Family Day Care | P | P | P | -- | -- | -- | -- | -- | -- | -- | * | -- |

# 6. ARTICLE VI - DIMENSIONAL AND DENSITY REGULATIONS

## 6.1. APPLICABILITY OF DIMENSIONAL AND DENSITY REGULATIONS

The regulations for each district pertaining to minimum lot area, minimum lot frontage, minimum front yard depth, minimum side yard distance, minimum rear yard distance, maximum height of buildings, maximum number of stories, and maximum building area, shall be specified in this Article and set forth in the Tables of Dimensional and Density Regulations, and subject to the further provisions of this Article.

## 6.2. TABLE OF DIMENSIONAL AND DENSITY REGULATIONS

See table on accompanying pages that is declared to be part of this By-Law.

## 6.3. REDUCTION OF LOT AREAS

The lot, yard areas or open space required for any new building or use may not include any part of a lot that is required by any other building or use to comply with any provisions of this By-Law, nor may these areas include any property of which the ownership has been transferred subsequent to the effective date of this By-Law, if such property was a part of the area required for compliance with the dimensional regulations applicable to the lot from which such transfer was made.

## 6.4. SEPARATION OF LOTS

Lots shall not be so separated or transferred in ownership so as not to comply with the provisions of this By-Law.

## 6.5. BUILDINGS IN FLOOD PLAIN DISTRICTS

### 6.5.1 REFERENCE TO EXISTING REGULATIONS

The Flood Plain District is established as an overlay district to all other districts. All development in the district, including structural and non-structural activities, whether permitted by right or by special permit must be in compliance with Chapter 131, Section 40 of the Massachusetts General Laws, Article 24, Saugus Wetlands Protection Bylaw, and with the following:

- Section of the Massachusetts State Building Code that addresses floodplain and coastal high hazard areas (currently 780 CMR 2102.0, "Flood Resistant Construction");

- Wetlands Protection regulations, Department of Environmental Protection (DEP) currently 310 CMR 10.00);

- Inland Wetlands Restriction, DEP (currently 302 CMR 6.00);

- Coastal Wetlands Restriction, DEP (currently 302 CMR 4.00);

- Minimum Requirements for the Subsurface Disposal of Sanitary Sewage, DEP (currently 310 CMR 15, Title 5);

- Any variances from the provisions and requirements of the above referenced state regulations and/or special permits may only be granted in accordance with the required variance and/or special permit procedures of these state regulations.

ZONING BY-LAWS TOWN OF SAUGUS

6.5.2. In the floodway, all encroachments, including fill, new construction, substantial improvements to existing structures, and other development are prohibited unless certification by a registered professional Engineer is provided by the applicant demonstrating that such encroachments shall not result in any increase in base flood water surface elevations or base flood mean velocities (feet per second). Refer to Table 3, Floodway Data, Town of Saugus Flood Insurance Study and the Town of Saugus Flood Insurance Rate Maps for base floodwater surface elevations and base flood mean velocities. Such certification shall be supported by accompanying documentation showing the method by which such finding was arrived at. Such documentation shall be certified as to its accuracy and appropriateness of methodology.

6.5.3 - BASE FLOOD ELEVATION AND FLOODWAY DATA

1. FLOODWAY DATA. In Zone A, A1-30, and AE, along watercourses that have not had a regulatory floodway designated, the best available Federal, State, local, or other floodway data shall be used to prohibit encroachments in floodways that would result in any increase in flood levels within the community during the occurrence of the base flood discharge.

2. BASE FLOOD ELEVATION DATA. Base flood elevation data is required for subdivision proposals or other developments greater than 10 lots or 1 acre, whichever is the lesser, within unnumbered A zones.

6.5.4 - NOTIFICATION OF WATERCOURSE ALTERATION. Notify, in a riverine situation, the following of any alteration or relocation of a watercourse: (1) Adjacent Communities, (2) NFIP State Coordinator, Massachusetts Office of Water Resources, 100 Cambridge Street, Boston, MA 02202, and (3) NFIP Program Specialist, FEMA Region I, Rm. 462, J.W. McCormack Post Office & Courthouse, Boston, MA 02109.

## 6.6.    SCREENING AND BUFFERS - INDUSTRIAL OR BUSINESS DISTRICTS

Screening and buffers shall be required in any industrial or business district that adjoins a residential district as follows: this strip shall be at least 25 feet in width, except when abutting a residential use in the R-3 and R-4 districts, in which case the width may be reduced to 10 feet. It shall contain a screen of plantings of vertical habit in the center of the strip not less than three (3) feet in height at the time of occupancy of such lot. Individual shrubs or trees shall be planted not more than three (3) feet on center, and shall thereafter be maintained by the owner or occupants so as to maintain a dense screen year-round. A solid wall or fence, not to exceed six (6) feet in height, complemented by suitable plantings, may be substituted for such landscaping. This screening and buffer strip shall not be paved, nor shall it ever be used for vehicular traffic or parking.

ZONING BY-LAWS TOWN OF SAUGUS

### 6.7.    ACCESSORY BUILDINGS AND OTHER STRUCTURES

In all Residential Districts, a detached accessory building shall conform to the following provisions:

| | |
|---|---|
| Maximum Coverage Of Rear Yard | 25% |
| Distance - Set Back Frontage | 20 feet |
| Lot Line - Side Yard | 10 feet |
| Lot Line - Rear Yard | 10 feet |
| Height | 20 feet |

An accessory building attached to the principal building shall be considered as an integral part thereof and shall be subject to front, side, and rear yard requirements applicable to the principal building. In Business and Industrial Districts, accessory buildings may be located on the lot so as not to violate the minimum front yard and height restrictions set forth in the Table of Dimensional and Density Regulations. The minimum required distance from side and rear lot line for accessory swimming pools shall be 10 feet in all districts.

### 6.8.    OTHER GENERAL DIMENSIONAL AND DENSITY PROVISIONS

The following regulations shall also apply:

A.  Existing residential uses in all non-residential districts shall be subject to the regulations for the particular type of dwelling in the designated district. Any new residential uses in non-residential districts shall be subject to the dimensional and density regulations of the nearest residential district as determined by the Building Inspector.

B.  Except for planned density developments for multi-family use, cluster residential development, community facilities, and public utilities, only one principal structure shall be permitted on a lot. In the case of multi-family development, other than planned density development, the minimum distance between the walls of such principal buildings that contain windows shall be twice the minimum side yard or side setback required in the district. (The minimum lot area required per each individual dwelling unit, building, or other unit of use shall be multiplied by the number of such units to obtain the minimum lot area required for the total tract of land. Other area regulations shall apply to the tract as a whole.)

C.  A corner lot shall have minimum side yards with depths that shall be the same as the required front yard depths for the adjoining lots.

D.  At each end of a through lot, there shall be a setback depth required that is equal to the front yard depth required for the district in which each street frontage is located.

E.  Projections into required yards or other required open spaces are permitted subject to the following:

    1.  Balcony or Bay window, limited in total length to one half (1/2) the length of the building, but not more than two (2) feet.

    2.  Open terrace or steps or stoop, under four (4) feet in height, up to one half (1/2) the required yard setback.

    3.  Steps or stoop over four (4) feet in height, windowsill, chimney, roof eve, fire escape, fire tower, storm enclosure or similar architectural features, not more than two (2) feet.

F.  The provisions of this By-Law governing the height of buildings shall not apply to chimneys, cooling towers, elevator bulkheads, skylights, ventilators, electronic equipment, elevator shafts, and other necessary appurtenances usually carried above roof, nor to domes, towers, stacks or spires, if not used for human occupancy and that occupy not more than 20 percent of the ground floor area of the building; nor to ornamental towers, observations towers, radio broadcasting towers, television and radio antennae, and other like structures, that do not occupy more than 20 percent of the lot area; nor to churches or agricultural or institutional non-residential buildings or buildings of private schools not conducted for profit that are primarily used for school purposes, provided the excepted appurtenances are not located within the flight paths of an airport as defined by FAA regulations. This exception shall not apply to exterior lighting support structures over 35' tall at sports fields or similar facilities within 1000 feet of residential property which structures shall require a special (S-2) permit from the Board of Selectmen, who, in granting such approval, shall follow guidelines in Sec. 12.5 of this By-Law.

G.  Where an "I" or "B" District abuts an "R" District, no building within the "I" or "B" District shall be within 25 feet of the boundary line of the "R" District.

H.  The maximum height of any hedge, fence or stone wall (except existing restraining walls) excluding chain link fences, shall not be more than 42 inches above the center line of an adjacent way when placed or constructed within 30 feet of the intersection of 2 ways or the intersection of a way and a driveway.

I.  The top of the foundation of a dwelling shall be at least two (2) feet above the center line of the street in cases where septic systems are approved. In all other cases, dwellings may be allowed to be built below this requirement provided that adequate public gravity sewer is made available by whatever means necessary and approved by the Board of Health.

J.  The limit of height in High Rise Business and Industrial Districts (B-2), subject to the provisions of Article XII, shall be six (6) stories, not to exceed ninety (90) feet, with the same exceptions as provided in paragraph F of this section.

ZONING BY-LAWS TOWN OF SAUGUS

K.  Hillside Protection

a)      Purpose. The purposes of this section shall be: (1) to preserve and enhance landscape amenities by encouraging the maximum retention of natural topographical features, such as drainage swales, streams, slopes, ridge lines, rock outcroppings, vistas, natural plant formations, and trees; (2) to minimize the effects of grading to insure that the natural character of steep slopes is retained; (3) to minimize water run-off and soil-erosion problems incurred in grading of steep slopes; and (4) to encourage innovative architectural, landscaping, circulation and site design. For the purposes of this section, the term "Natural slope" shall be defined as the elevation of the ground surface in its natural state, and "natural state" shall be defined as including soil and vegetation of every kind, before man-made alterations such as grading, excavation or filling.

b)      The slope of land at any point, stated as a percentage, shall be defined as the change in elevation over a horizontal distance measured perpendicular to the contours divided by the distance over which the change occurs multiplied by 100.

Slope = (Change in elevation/Horizontal distance measured perpendicular to contours) X 100

c)      All natural slopes exceeding 25% over a horizontal distance of 30 feet as measured perpendicular to the contour are protected and shall remain in their natural state.

d)      This section shall apply to R-1, R-2, R-3, R-4, B-1, B-2, B-3, I-1 and I-2 zoning districts.

e)      The Saugus Planning Board may grant a special permit from the provisions of this section if, in the Board's opinion, the proposal satisfies the purposes of subsection (a) above. The application for a special permit shall be accompanied by a plan, certified by a Registered Professional Land Surveyor, showing the existing topography at two-foot (2') contour intervals.

f)      The provisions of this section shall not apply for eight years to building lots in a definitive subdivision submitted in accordance with M.G.L. c. 41 in order to obtain the protections afforded by M.G.L. c. 40A Sec. 6, or for the same period, after endorsement, to building lots in a definitive subdivision plan approved  prior to the enactment of this section.

## 6.9.  House Numbering

Every property owner shall display the house number, using only numeric digits of at least 4 inches clearly and obviously visible, day or night. If the house sits fifty (50) feet or more from the street or way, the number shall be affixed to a post at a point at least four (4) feet above ground level, at the entrance to the property.

The use of other than numeric digits as described herein, shall not conflict with nor be in lieu of the requirements of this by-law. The use of house numbers not assigned by the Town Assessors is prohibited.

It shall be the determination of the Town Assessors for the assignment of all house numbers and sub-numbers.

In all cases, the house numbers shall be in contrast with the color of the house, shall not be obstructed by shrubs or other growth, shall not be obstructed by furniture, screening or any other visual restriction, so it may be seen readily from the street, both day and night by any public safety or other emergency personnel.

During any period of construction or reconstruction, the house numbers shall be posted in plain view at the main entrance.

## ZONING BY-LAWS TOWN OF SAUGUS

# TABLE OF DIMENSIONAL AND DENSITY REGULATIONS

| District | | Minimum Lot Area Ft.² (or as noted) | Min. Lot Frontage (Feet) | Minimum Yards | | | Max. Height (Feet) | Max. Stories (No.) | Max. Bldg. Area (Percent) |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Front (Feet) | Side (Feet) | Rear (Feet) | | | |
| R1 | Any Permitted Use | (1) 20,000 | (4) 100 | 20 | (4) 15 | 15 | 35 | 3 | 25 |
| R2 | Any Permitted Use | 20,000 | (6) 100 | (6) 30 | (6) 20 | 25 | 35 | 3 | 25 |
| R3 | Any Permitted Use | 20,000 | (6) 100 | (6) 20 | (6) 15 | 15 | 35 | 3 | 25 |
| R4 | Any Permitted Use | (3) 10,000 | 100 | (3) 30 | (3) 20 | 20 | (3) 90 | (3) -- | 25 |
| B1 | Any Permitted Use | 5,000 | 50 | (6) 10 | -- | -- | 40 | 3 | (5) 70 |
| B2 | Any Permitted Use | 10,000 | 100 | (6) 50 | -- | -- | (3) 90 | (3) -- | (5) 70 |
| B3 | Any Permitted Use | | | | | | | | |
| | East of Broadway | 10,000 | 100 | (6) 20 | 15 | (6) 15 | 20 | 1 | (5) 70 |
| | West of Broadway | 20,000 | 100 | (6) 30 | 20 | (6) 25 | 20 | 1 | (5) 70 |
| I1 | Any Permitted Use | 20,000 | 100 | (6) 30 | -- | (6) -- | 40 | 3 | (5) 70 |
| I2 | Any Permitted Use | 20,000 | 100 | (6) 50 | -- | (6) -- | 40 | 3 | (5) 70 |
| F.P. | Any Permitted Use | -- | -- | -- | -- | -- | -- | -- | -- |

(1) There shall be an additional 2,500 sq. ft. for each unit in excess of four (4), except for federal or state-aided housing for the elderly or handicapped, built for the Saugus Housing Authority, where up to 35 units/acre of land may be allowed by Special Permit from the Board of Appeals under Section 12.4G of this Zoning By-Law.

(2) Where Town Houses abut R1, R2, or R3 Districts, there shall be minimum of 20 feet on each exterior side.

(3) In Multi-Density Districts and High Rise Business and Industrial Districts, heights over 40 ft. will be allowed only by special permit by Board of Selectmen. Such height is not to exceed 90 ft.

(4) Any building that abuts a residential district shall have front and rear yards as required in adjoining district. Setback on Rt. 1 and 107 shall be 50 ft.

(5) Buildings located on Business of Industrial zoned land shall not exceed 80% if constructed on a corner lot. Open space shall be provided in the rear, or in part on sides.

(6) These minimum requirements shall apply to every lot of land heretofore or hereafter laid out for dwelling purposes except that lots laid out and recorded at Registry of Deeds before March 21, 1949, and having not more than 55 ft. frontage shall have a side yard on each side of not less than 10 ft.

(7) In addition to the exemptions listed in M.G.L. Ch. 40A, Sec. 6, this area requirement shall not apply for up to three lots recorded or endorsed before September 1, 1997 and held in common ownership with adjoining land, provided each such lot is at least 10,000 sq. ft. in area. Any extension or alteration of a structure in existence on June 23, 1997 shall not require a finding of the Board of Appeals under Article IX, Sec 9.2, provided such alteration, extension or expansion meets the dimensional requirements of the zoning by-laws in existence before June 23, 1997.

**ZONING BY-LAWS TOWN OF SAUGUS**

# 7. ARTICLE VII - REGULATION OF ADVERTISING SIGNS AND BILLBOARDS

## 7.1.    PURPOSES

The purpose of this Article is to regulate and restrict billboards, signs and other advertising devices within the Town in order to protect and enhance the scenic, historic and aesthetic qualities of the environment of this Town and the safety, convenience and general welfare of its inhabitants.

## 7.2.    DEFINITIONS.

**Sign:** A sign shall mean and include any privately owned permanent or temporary device, structure, placard, painting, drawing, poster, letter, pictorial representation, emblem, pennant, insignia, numeral, trade flag, or representation used as, or that is in the nature of an advertisement, announcement, or direction that is on a public way or on private property within public view of a public way, public park or reservation. The above definition shall include signs located inside a window but shall not include the display of merchandise visible through such window.

**Standing Sign:** A standing sign shall include any and every sign erected on or affixed to the land and any and every exterior sign that is not attached to the building.

**Person:** Person shall include any individual, corporation, society, association, partnership trust or other entity.

**Public Way:** Public way shall include a private way that is open to public use.

**Sign Area of:**    (a) For a sign, either free standing or attached the area shall be considered to include all lettering, wording, and accompanying designs and symbols, together with the background whether open or enclosed on which they are displayed, any frame around the sign and any "cutouts" or extensions, but shall not include any supporting framework and bracing incidental to the display itself.

(b) Where the sign consists of individual letters or symbols attached to a surface, building, wall or window, the area shall be considered to be that of the smallest rectangle or other convex shape that encompasses all of the letters and symbols.

**Outdoor Advertising Board:** The Outdoor Advertising Board of the Commonwealth of Massachusetts or any board or officials that may hereafter succeed to its powers or functions.

ZONING BY-LAWS TOWN OF SAUGUS

## 7.3.    GENERAL REQUIREMENTS - ALL SIGNS.

1.  **MOVEMENT**: No sign shall contain any visible moving or movable parts, except such portions of a sign as consist solely of indicators of time and/or temperature and except further that individual letters and/or numerals that make up the message of sign that are normally and routinely removed and replaced on a regular basis shall not be considered movable parts. No sign shall be portable except when used as temporary signs pursuant to this Sign By-Law.

2.  **ILLUMINATION:**

    a)    No sign shall be illuminated between the hours of 11 p.m. and 7 a.m. unless, in the case of an accessory sign, the premises on which it is located are open for business, and except as provided in Section 7.4 herein.

    b)    No sign shall contain any moving, flashing, intermittent or animated lights, except such portions of a sign as consist solely of indicators of time and/or temperature.

    c)    No illumination shall be permitted that casts glare onto any portion of any street that would, in the opinion of the Chief of Police, constitute a driving hazard.

    d)    The provisions of this Section shall apply not only to exterior signs, but also to interior signs that are designed or placed to show through windows of buildings.

3. **WINDOW SIGNS:** Signs placed on the inside of the glass of a window shall be permitted provided that the aggregate area of such signs does not exceed 25 percent of the area of the window glass, except as provided in Section 7.4 herein. Any sign placed within 18" of the window glass shall be considered a window sign.

4. **TEMPORARY SIGNS:** Temporary signs that conform with all regulations of this Sign By-Law shall be permitted. Before a temporary sign (other than a sign placed in a window) shall be put in place, authorization shall be obtained from the Sign Officer after payment of a fee to be determined by the Board of Selectmen.

5. **ROOF SIGNS:** A sign that projects above the top of the wall to which it is attached (but not including a canopy, marquee, or roof-type decorative shelter) and a sign primarily placed on top of a structure shall not be permitted.

6. **CONSTRUCTION AND MAINTENANCE:** No sign shall be painted or posted on the exterior surface of any wall but all signs must be painted, posted or otherwise securely affixed to a substantial intermediary removable surface that shall be securely affixed to the building. The foregoing, however, shall not prevent installation of a sign by individual letters or devices securely affixed to the exterior wall of a building. All signs, together with their structural elements, shall be kept in good working repair and in a proper state of preservation to the reasonable satisfaction of the Sign Officer.

7. Temporary signs visible from the public way that are attached to the inside area only of the fence at Grabowski field that do not exceed 4' x 4' in square dimensions and that are placed between the dates of April 1st and September 30th shall be permitted with the approval of the Town Manager. **Note:** Attorney General's office approval state: "This approval does not constitute an approval of the use of temporary signs by anyone other than the Town without full compliance with all legal requirements. Mass. Const. amend. art. 18".

ZONING BY-LAWS TOWN OF SAUGUS

## 7.4.   SIGNS - ADDITIONAL REQUIREMENTS

No sign shall be permitted except signs that meet the General Requirements of Section 7.3 and the following additional requirements:

1.   SINGLE RESIDENCE, GENERAL RESIDENCE, MULTI-DENSITY RESIDENTIAL AND FLOOD PLAIN DISTRICTS: No sign shall be erected or maintained on any lot in a Single Residence, General Residence, Multi-Density Residential or Flood Plain District except as hereafter expressly permitted:

   a)   Number and Size: There may be one such sign for each lot indicating only the name of the owner or occupant, the street number, and a permitted use or occupation in the particular area under the Zoning By-Law. Such sign may be a standing sign but shall not exceed one (1) square foot or, where a permitted use or occupation is set out, two (2) square feet in area and shall not exceed a height above the ground of eight (8) feet.

   b)   Temporary Sign: There may be one temporary unlighted sign on each lot advertising the sale or rental of the premises or the name and address of the contractor, architect and engineer responsible for any construction on the premises, provided that such sign shall not exceed 25 square feet in area and shall be removed promptly after such sale, rental or construction has been effected.

   c)   Illumination: No sign shall be illuminated except:

      (1)   By a white, steady, stationary light of reasonable intensity, shielded and directed solely at the sign; or,

      (2)   By interior non-exposed lights of reasonable intensity.

      (3)   The foregoing is applicable whether the sign is exterior to a building or designed to be visible through a door or a window.

   d)   Color: No illuminated sign shall contain more than two colors nor shall any sign contain more than two (2) colors. No sign shall contain red or green lights if such colors would, in the opinion of the Chief of Police, constitute a driving hazard. Both black and white are considered separately as colors for enumeration under this section.

   e)   Non-profit Institutions: There may be one bulletin or announcement board, identification sign or entrance marker for each public entrance to the premises upon which a church, synagogue, school, or other non-profit organization is located, provided that there shall be no more than three such signs for each church, synagogue, school, or other non-profit organization, not exceeding all together twenty-five (25) square feet in area.

2.   BUSINESS DISTRICTS: No sign shall be permitted in an area zoned as a business district except signs permitted under Section 7.4 and the following:

   (a)   Location:

      (1)   A sign shall be affixed to a building except as hereinafter provided as to standing signs.

      (2)   A sign affixed to a building shall be parallel with a wall of the building and shall not project beyond the face of any other wall to which it is affixed.

      (3)   The base of the sign shall not project more than 16 inches from the wall to which it is affixed, in the case of a sign parallel with the wall.

ZONING BY-LAWS TOWN OF SAUGUS

(b) Size: If affixed against a wall, the area of the sign may not exceed 10 percent of the wall area of the wall on which it is displayed. For purposes of applying this maximum space limitation, any intermediary removable surface to which a sign is affixed shall be deemed part of the sign; and any sign composed of separate letters or devices cut into or affixed to a wall shall be deemed to occupy the entire area within a single continuous perimeter enclosing the extreme limits of the sign, including any structural elements.

(c) Number:

(1) There shall be not more than one (1) exterior sign affixed to the wall of the building and said sign shall be located at the principle entrance of each business establishment consisting of a single building, except that if such building has more than one (1) public entrance, there may be a secondary sign affixed to the wall in which such additional public entrance is located other than the wall to which the principle sign is affixed. If a single building consists of more than one (1) business establishment, there shall not be more than one (1) exterior sign affixed to the building for each such business establishment. If a business establishment consists of more than one (1) building, a secondary sign may be affixed to a wall of each such building. The secondary sign or signs for any business establishment shall not exceed, in the aggregate, 50 percent of the maximum permissible area for a single sign for said business establishment.

(2) In addition to the foregoing sign or signs, one directory of the business establishments occupying a building may be affixed to the exterior wall of the building at each entrance to the building. Such directory shall not exceed an area determined on the basis of one (1) square foot for each establishment occupying the building and shall be included in determination of the area limitations.

(d) Standing Signs: In addition to the number of signs allowed in Section 7.4 (2-c), the Board of Appeals may, in its discretion, authorize a special permit for a standing sign after finding that the nature and use of the premises or the location of the building with reference to the street or streets is such that a standing sign may be permitted in harmony with the general purpose and intent of this Sign By-Law and this Article subject to the following requirements:

(1) Any such sign shall not exceed (a) 50 square feet in area; (b) 10 feet in any dimension; and (c) shall not be higher at any point than 20 feet from the ground.

(2) In granting such special permit, the Board of Appeals shall specify the size, type and location of the sign and impose such other conditions, safeguards and limitations as it may deem to be in harmony with this Sign By-Law and the public interest.

(e) Illumination:

(1) No sign located in the above mentioned Zoning District shall be illuminated except by a white, steady, stationary light shielded and directed solely at the sign; or

(2) By the interior non-exposed lights of reasonable intensity;

(3) The foregoing is applicable whether the sign is exterior to a building or designed to be visible through a door or window.

**ZONING BY-LAWS TOWN OF SAUGUS**

(f) <u>Color:</u> No illuminated sign shall contain more than five (5) colors nor shall any sign contain more than five (5) colors. No sign shall contain red or green lights if such colors would, in the opinion of the Chief of Police, constitute a driving hazard. Both black and white are considered separately as colors for enumeration under this Section.

(g) <u>Temporary Signs:</u> There may be one temporary sign maintained for a period of not more than 30 days upon application to the Sign Officer showing that said temporary sign is required as a result of the repair and/or reconstruction of the existing permitted sign.

3. <u>INDUSTRIAL, LIGHT INDUSTRIAL, AND HEAVY INDUSTRIAL DISTRICTS:</u> No sign shall be permitted in an area zoned as Industrial, Light Industrial or Heavy Industrial Districts except the following:

(a) <u>Location:</u>

(1) No sign shall be affixed to a building except as hereinafter provided as to standing signs.

(2) A sign affixed to a building shall be parallel with a wall of the building and shall not project beyond the face of any other wall to which it is attached.

(3) The base of the sign shall not project more than 16 inches from the wall to which it is affixed, in the case of a sign parallel with the wall.

(b) <u>Size:</u> If attached flat against a wall, the area of the sign may not exceed 10 percent of the wall area of the wall on which it is displayed. For purposes of applying this maximum space limitation, any intermediary removable surface to which a sign is affixed shall be deemed part of the sign, and any sign composed of separate letters or devices cut into or affixed to a wall shall be deemed part of the sign, and any sign composed of separate letters or devices cut into or affixed to a wall shall be deemed to occupy the entire area within a single continuous perimeter enclosing the extreme limits of the sign, including any structural elements.

(c) <u>Number:</u>

(1) There shall be not more than one (1) exterior sign affixed to the building for each business establishment consisting of a single building, except that if such building has more than one public entrance there may be a secondary sign affixed to each wall in which such entrance is located other than the wall to which the principal sign is affixed. If a single building consists of more than one business establishment, there shall be not more than one (1) exterior sign affixed to the building for each such business establishment. If a business establishment consists of more than one building, a secondary sign may be affixed to a wall of each building. The secondary sign or signs for any business establishment shall not exceed, in the aggregate, 50 percent of the maximum permissible area for a single sign for said business establishment.

(2) In addition to the foregoing sign or signs, one directory of the business establishments occupying a building may be affixed to the exterior wall of the building at each entrance to the building. Such directory shall not exceed an area determined on the basis of one (1) square foot for each establishment occupying the building and shall be included in determination of the permissible area limitations.

(d) <u>Standing Signs:</u> In addition to the number of signs allowed in Section 7.4 (3-c) a standing sign shall be allowed provided, however, that any such sign shall not exceed (a) 50 square feet in area; (b) 10 feet in any dimension; (c) shall not be higher at any point than fifteen (15) feet from the ground.

ZONING BY-LAWS TOWN OF SAUGUS

(e) Illumination:

    (1) No sign located in these above mentioned Zoning Districts shall be illuminated except by a white, steady, stationery light shielded and directed solely at the sign; or

    (2) By interior non-exposed lights of reasonable intensity;

    (3) The foregoing is applicable whether the sign is exterior to a building or designed to be visible through a door or window.

(f) Color: No illuminated sign shall contain more than five (5) colors. No sign shall contain red or green lights if such colors would, in the opinion of the Chief of Police, constitute a driving hazard. Both black and white are considered separately as colors for enumeration under this Section.

(g) Temporary Signs: There may be one temporary sign maintained for a period of not more than 30 days upon application to the Sign Officer showing that said temporary sign is required as a result of the repair and/or reconstruction of an existing permitted sign.

4. HIGH RISE BUSINESS AND INDUSTRIAL DISTRICT. No sign shall be permitted in an area zoned as High Rise Business and Industrial Districts except the following:

(a) Location:

    (1) A sign shall be affixed to a building except as hereafter provided as to Standing Signs.

    (2) A sign affixed to a building shall be parallel with a wall of the building and shall not project beyond the face of any other wall of the building, or above the top of the wall to which it is affixed.

    (3) The base of the sign shall not project more than 16 inches from the wall to which it is affixed in the case of a sign parallel with the wall.

(b) Size: If affixed flat against a wall the area of the sign may not exceed 15 percent of the wall area on which it is displayed. For the purposes of applying this maximum space limitation, any intermediary removable surface to which a sign is affixed shall be deemed part of the sign; and any sign composed of separate letters or devices cut into or affixed to a wall shall be deemed to occupy the entire area within a single continuous perimeter enclosing the extreme limits of the sign, including any structural elements.

(c) Number:

    (1) There shall be not more than one (1) exterior sign affixed to the wall of the building and said sign shall be located at the principle entrance of each business establishment consisting of a single building, except that if such building has more than one (1) public entrance, there may be a secondary sign affixed to the wall in which such additional public entrance is located other than the wall to which the principle sign is affixed. If a single building consists of more than one business establishment, there shall be not more than one (1) exterior sign affixed to the building for each such business establishment. If a business establishment consists of more than one building, a secondary sign may be affixed to a wall of each such building. The secondary sign or signs for any business establishment shall not exceed in the aggregate 50 percent of the maximum permissible area for a single sign for said business establishment.

ZONING BY-LAWS TOWN OF SAUGUS

(2) In addition to the foregoing sign or signs, one directory of the business establishments occupying a building may be affixed to the exterior wall of the building at each entrance to the building. Such directory shall not exceed an area determined on the basis of one (1) square foot for each establishment occupying the building and shall be included in determination of the permissible area limitations.

(d) Standing Signs: In addition to the number of signs allowed in Section 7.4 (4-c) a standing sign shall be allowed provided that any such sign shall not exceed:

(1) Two hundred twenty-five (225) square feet in area;

(2) Fifteen (15) feet in any dimension;

(3) Shall not be higher at any point than 25 feet from the ground.

(e) Illumination:

(1) No sign located in these above mentioned Zoning Districts shall be illuminated except by a white, steady, stationary light shielded and directed solely at the sign; or

(2) By interior non-exposed lights of reasonable intensity;

(3) By exposed gaseous tubes;

(4) The foregoing is applicable whether the sign is exterior to a building or designed to be visible through a door or window.

(5) No sign shall be illuminated between the hours of 1 a.m. and 7 a.m. unless, in the case of a sign, the premises on which it is located are open for business.

(f) Color: No illuminated sign shall contain more than five (5) colors. No sign shall contain red or green lights if such colors would, in the opinion of the Chief of Police, constitute a driving hazard. Both black and white are considered separately as colors for enumeration under this Section.

(g) Temporary Signs: There may be one temporary sign maintained for a period of not more than 30 days upon application to the Sign Officer showing that said temporary sign is required as a result of the repair and/or reconstruction of an existing permitted sign.

(h) Window Signs: Signs placed on the inside of the glass of a window shall be permitted provided that the aggregate area of such signs does not exceed 50 percent of the area of the window glass and further provided that said window sign allowed by this Section 7.4 (4-h) shall be restricted to those signs that are normally and routinely removed, replaced and the message changed on a regular basis and further provided that the use of a window sign allowed by this Section 7.4 (4-h) shall not exceed 30 days in a consecutive sixty (60) day period. The total area of a window sign allowed pursuant to Section 7.3 (3), shall not exceed, in the aggregate, 50 percent of the window glass.

## 7.5. PRE-EXISTING NON-CONFORMING SIGNS.

1. PRE-EXISTING NON-CONFORMING SIGNS:

(a) Except as hereinafter provided, Pre-existing, Non-Conforming Signs shall meet the provisions of Article II, Section 2.3.

(b) The provisions of this By-Law shall apply with respect to any sign which:

(1) The cost alteration, repair, reconstruction, rebuilding, or change would exceed 33 1/3 percent of the replacement value of the sign; said costs and replacement value to be certified by an accredited insurance appraiser upon written request of the Sign Officer with the cost of said appraisal being borne by the sign owner.

(2) Shall have been abandoned or not used for a continuous period of two (2) years.

-35-

(3) This By-Law shall apply to any non-conforming sign that at any time during the year preceding the effective date of this Article, or at any time thereafter, advertises or promotes the sale of goods, products, or services not sold, provided, or manufactured upon the same premises on which the sign is located.

(4) Except as provided in subsections (1), (2), (3), (5) and (6), this By-Law shall not apply to any non-conforming sign legally erected prior to the effective date of this By-Law.

(5) All non-conforming signs subject to subsection (3) shall be removed within 120 days of the effective date of this By-Law or within 120 days of the date on which the sign first becomes subject to subsection (3), whichever occurs later.

(6) Shall not have been repaired or properly maintained, within 60 days, after notice to that effect has been given by the Sign Officer.

(c) Any enlargement or extension of an existing sign that does not conform in every way to the present requirements of Article VII of this zoning by-law must be approved by the Saugus Board of Appeals, as a Special Permit, after a hearing as required by Ch. 40A Secs. 9 and 11. Refacing of preexisting signs shall be exempted. This includes all signs for which no previous permit exists.

## 7.6.   ADMINISTRATION AND ENFORCEMENT.

1. <u>ENFORCEMENT:</u> The provisions of this Article shall be enforced by the Building Inspector who is hereby designated as the Sign Officer. The Sign Officer is authorized to order the repair or removal of any sign and its supporting structure that, in his judgment, is dangerous or in disrepair or that is erected or maintained contrary to the provisions of this By-Law.

2. <u>PERMITS AND FEES:</u> Except for signs allowed pursuant to compliance with Section 7.4 (1), no sign shall be erected, altered or enlarged until a permit has been issued by the Sign Officer. Such permit shall be issued only if the sign complies or will comply with all applicable provisions of this Sign By-Law and any other applicable rules and regulations. A schedule of fees for permits may be determined from time to time by the Board of Selectmen. The provisions of this section shall not apply to signs permitted in a residential area or temporary signs to be placed in a window.

3. <u>PENALTY FOR VIOLATION:</u> Provisions of Article X, Section 10.8 apply.

4. <u>APPEAL:</u> See Article XI.

5. <u>SEVERABILITY:</u> See Article XI.

# 8. ARTICLE VIII - OFF STREET PARKING AND LOADING REGULATIONS

## 8.1. OFF STREET PARKING REQUIREMENTS

Off street parking spaces shall be provided for every new structure, the enlargement of an existing structure, the development of a new land use or any change of an existing use in its entirety in accordance with the Table of Use and Off Street Parking Regulations (see Article V), the Table of Off Street Parking Regulations, and other requirements contained within Article VIII.

The Parking Code stipulated in the Table of Use and Parking Regulations shall correspond to the use and space requirements set forth in the Table of Off Street Parking Regulations as presented in this Article.

## 8.2. OFF STREET LOADING AND UNLOADING REQUIREMENTS

Every building erected for Retail and Commercial Service, Wholesale, Transportation and Industrial, and Community Facility use as specified in the Table of Use and Parking Regulations and for every such use as hereinafter established in an existing building or area, the off street loading and unloading requirements presented in the Table of Off Street Loading Regulations shall apply.

## 8.3. EXISTING SPACES

Parking or loading spaces being maintained in any district in connection with any existing use on July 1, 1978, shall not be decreased so long as said use remains, unless a number of parking or loading spaces is constructed elsewhere such that the total number of spaces conforms to the requirements of the tables of this Article provided: this regulation shall not require the maintenance of more parking or loading spaces than is required according to the tables.

## 8.4. COMPUTATION OF SPACES

When the computation of required parking or loading spaces results in the requirement of a fractional space, any fraction over one-half (1/2) shall require one space.

## 8.5. COMBINED FACILITIES

Parking required for two (2) or more buildings or uses may be provided in combined facilities on the same or adjacent lots, subject to approval by the Building Inspector where it is evident that such facilities will continue to be available for the several buildings or uses.

## 8.6. CONTINUANCE

Required off street parking or loading spaces, that after development are later designated as and accepted by the Town for off street parking purposes, shall continue to serve the uses or structures to meet these requirements so long as said use or structure remains.

## 8.7. LOCATION OF PARKING SPACES

Required off street parking spaces shall be provided on the same lot as the principal use they are required to serve; when practical difficulties, as determined by the Board of Selectmen, prevent their establishment upon the same lot, they shall be established no further than 300 feet from the premises to which they are appurtenant, by special permit.

ZONING BY-LAWS TOWN OF SAUGUS

## 8.8.    LOCATION OF LOADING SPACES

The loading spaces required for the uses listed in the Table of Off Street Loading Requirements shall, in all cases, be on the same lot as the use they are intended to serve. In no case shall the required loading spaces be part of the area used to satisfy the parking requirements of this By-Law.

## 8.9.    USE OF MUNICIPAL LOTS FOR PARKING

The Board of Selectmen by special permit may, when practical difficulties exist, allow the substitution of space within municipal-owned lots in lieu of parking requirements of this Article provided they are within 1,000 feet of the building that it is intended to serve.

**ZONING BY-LAWS TOWN OF SAUGUS**

# TABLE OF OFF STREET PARKING REGULATIONS

| Parking Code | Uses | Number of Spaces per unit (Min.) |
|---|---|---|
| A | Single and two-family dwelling | Two for each dwelling unit |
| B | Multi-family dwelling | Two for each dwelling unit, except for housing for the elderly that shall provide one for each three units |
| C | Lodging house, dormitory, fraternity, sorority, YMCA, YWCA, and similar group quarters | One for each rental or sleeping unit |
| D | Theater, restaurant, auditorium, church or similar place of public assembly with seating facilities | One for each four seats of total seating capacity |
| E | Automotive retail and service establishment and other retail and service establishments utilizing extensive display areas, either indoor or outdoor that are unusually extensive in relation to customer traffic | One per 1,000 square feet of gross floor space. In the case of outdoor display areas, one for each 1,000 square feet of lot area in such use |
| F | Other retail, service, finance, insurance, or real estate establishment | One per each 300 square feet of gross floor space except that there shall be required for every laundromat business, a number of spaces equal to one-half the number of washing machines for public use. |
| G | Hotel, motel, tourist court | One for each sleeping room plus one for each 400 square feet of public meeting room and restaurant space |
| H | Medical/Dental office building | Four spaces per each doctor |
| I | Wholesale establishment, warehouse or storage establishment | One per each 1,000 square feet of gross floor space |
| J | Manufacturing or industrial establishment | One per each 600 square feet of gross floor space OR 0.75 per each employee of the combined employment of the two largest successive shifts, whichever is larger |

Source: Generally recognized highway and street standards (AASHO) adjusted to reflect the needs of Saugus.

**June 1999**

ZONING BY-LAWS TOWN OF SAUGUS

## TABLE OF OFF STREET PARKING REGULATIONS

| Parking Code | Uses | Number of Spaces per unit (Min.) |
|---|---|---|
| K | Hospital | Two per bed at design capacity |
| L | Nursing home | One for each 3 beds at design capacity |
| M | Business, trade, or industrial school or college | One for each 200 square feet of gross floor area in classrooms, plus space for gymnasium or auditorium whichever has larger capacity (see Code D) |
| N | Other school | Two per classroom in an elementary and junior high school; four per classroom in a senior high school plus space for auditorium or gymnasium, whichever has the larger capacity (see Code D) |
| O | Community facility (town building, recreation, etc.) | One per each 400 square feet of gross floor space |
| P | Public utility | One for each 400 square feet of gross floor area devoted to office use. One for each 88 square feet of gross floor area per other use |
| Q | Transportation terminal establishment | One for each 600 square feet gross floor area |
| R | Mixed use | Sum of various uses computed separately |
| S | Any use permitted by this By-Law not interpreted to be covered by this schedule | Closest similar use as shall be determined by the Building Inspector |
| T | Mixed residential and home occupation use | The applicable residential requirement plus one for each 600 square feet of gross floor area used for home occupation |

## TABLE OF OFF STREET LOADING STANDARDS

| Uses | Number of Spaces per unit (Min.) |
|---|---|
| Retail trade, manufacturing, and hospital establishment with over 5,000 square feet of net floor area | One per 20,000 square feet or fraction thereof of net floor area up to two spaces: one additional space for each 60,000 square feet or fraction thereof of net floor area over 40,000 square feet |
| Business services, other services, community facility (school, church, town building, recreation, etc.) or public utility establishment with over 5,000 square feet of net floor area | One per 75,000 square feet or fraction thereof of net floor area up to two spaces; one space for each 200,000 square feet or fraction thereof net floor area over 150,000 square feet |

Source: Generally recognized highway and street standards (AASHO) adjusted to reflect the needs of Saugus.

ZONING BY-LAWS TOWN OF SAUGUS

# 9. ARTICLE IX - NONCONFORMING USES, STRUCTURES AND LOTS

## 9.1. NONCONFORMITY BY INITIAL ENACTMENT OR AMENDMENT

The provisions of this article apply to nonconforming uses, structures and lots. It is the purpose of this By-Law to discourage the perpetuity of nonconforming uses whenever possible.

## 9.2. EXTENSION AND ALTERATION

1. Preexisting nonconforming structures or uses may be extended or altered by Special Permit from the Board of Appeals, provided that no such extension or alteration shall be permitted unless there is a finding by that Board, after a hearing, that such change, extension or alterations shall not be substantially more detrimental than the existing nonconforming use to the neighborhood.

2. This Section shall not apply to signs or other advertising devices subject to Section 7.5 herein.

3. Any nonconforming structure or portion thereof that has come into conformity shall not again become nonconforming.

## 9.3. RESIDENTIAL LOT OF RECORD

Any increase in area, frontage, width, yard, or depth requirements of this By-Law shall not apply to a lot for single to two-family residential use that at the time of recording or endorsement, whichever occurs sooner, was not held in common ownership with any adjoining land, conformed to then existing requirements and had less that the proposed requirements but at least 5,000 square feet of area and 50 feet of frontage.

When the total area and frontage of a series of adjoining lots fronting on the same Public Way or Private Way duly recorded prior to July 1, 1978, and held in common ownership, at least equals the area and frontage requirements of this By-Law, that series of lots shall be considered as one lot.

## 9.4. RESTORATION.

1. Any nonconforming structure or structure occupied by a nonconforming use, that is totally destroyed by fire or other cause (natural) may be rebuilt on its original foundation according to the original floor area limitations, and used for its original use. Otherwise, it shall not be rebuilt, except in accordance with the use, dimensional and density regulations of this By-Law.

2. Any nonconforming structure or structure occupied by a nonconforming use, that is damaged by fire or other natural cause, may be repaired or rebuilt according to the dimensions and floor area limitations of the original structure and used for its original use or a conforming use.

3. If restoration under 2 above is not started within two (2) years of the cause of the damage, the repaired structure shall not be used except for a conforming use.

## 9.5. ABANDONMENT

Any nonconforming use of a structure or lot that has been abandoned or not used for a continuous period of two (2) years or more shall not be used again except for a conforming use.

## 9.6. MOVING

Any nonconforming structure shall not be removed to any other location on the lot or any other lot unless every portion of such structure, the use thereof, and the lot shall be conforming.

ZONING BY-LAWS TOWN OF SAUGUS

## 9.7. NON-CONFORMING TWO-FAMILY HOMES IN SINGLE-FAMILY DISTRICTS

1. An owner of an existing non-conforming two-family home in a single-family residential district may apply to the Town Building Inspector for a certificate of occupancy for two-family use, and shall receive such a certificate if all the following conditions are met:

    a) Documentary proof from Town Assessors or Building Department files, from Essex County (South) Registry of Deeds records; from Town census or voting lists, or from Polk or other similar directories, that the structure was in existence before January 5, 1929, and was occupied by two families before that date. Formal, notarized personal affidavits may be used to corroborate there requirements, but such affidavits shall not be the only verification.

    b) Documentary evidence from Town records or such publications as the Polk Directory that the second family unit was in existence and occupied for any five-year period between January 1, 1990 and January 1, 1997, which for the purpose of this by-law shall be considered prima facie evidence of continued two-family use since January 5, 1929. Notarized personal affidavits may be used to corroborate such documentary evidence.

    c) Exempted from the above requirements are two-family semi-detached homes which are covered in 2. below.

    d) Four off-street parking spaces must be provided.

2. For the purpose of this by-law, a semi-detached structure is defined as two one-family houses built together, with an interior fireproofed wall of separation between them, and having separate exterior entrances (separate electric meters, separate heating systems, separate domestic hot water heating appliances). When the owner of a semi-detached two-family home presently located in an R-1 or R-2 single-family district submits to the Town Building Inspector evidence from Town or Registry records that a building permit for the structure was issued before March 17, 1969, it shall be considered legally non-conforming and a certificate of occupancy shall be issued by the Town for both units. Both the fireproofed wall and the separate exterior entrances shall still exist, and parking for four vehicles, not necessarily unobstructed, shall be provided on the same lot.

# 10. ARTICLE X - ADMINISTRATION AND ENFORCEMENT

## 10.1.  ADMINISTRATIVE OFFICER

A Zoning Enforcement Officer, who may be the Building Inspector, shall be appointed by the Town Manager with the approval of the Board of Selectmen, and shall administer and enforce the provisions of this By-Law.

## 10.2.  PERMIT REQUIRED

It shall be unlawful for any person to erect, construct, reconstruct, move, or alter a structure, or change the use or lot coverage, or extend or displace the use of any building, structure or lot without applying for and receiving the required building permit from the Building Inspector. Before a building permit is issued, the Zoning Enforcement Officer shall, within 30 days of receipt of application, issue a Certificate of Zoning Compliance stating that all requirements of the Saugus Zoning By-Laws are met.

An application for a permit shall be accompanied by a plan, accurately drawn, showing the actual shape and dimensions of the lot to be built upon, the exact location and size of all buildings or structures already on the lot, the location where new buildings or structures are to be erected, the existing and intended use of each building or structure and such other information as may be necessary to provide for execution and enforcement of the By-Law. A record of all applications, plans, and permits shall be kept on file by the Building Inspector.

No building permit for demolition of a building or other structure (except signs) shall be issued by the Building Inspector without the Building Inspector first notifying the Historical Commission by certified letter. Except for minor buildings and structures, applications for demolition permits shall be accompanied by photographs of the building to be demolished, which photographs shall be deposited with the Historical Commission. If no objection is raised by the Historical Commission within 21 days of receipt of Certified Mail letter from the Building Inspector, it is assumed that no objection is present and the permit shall not be withheld under this section. The objection of the Historical Commission shall not be a legal reason for the denial of said permit.

Within Zone A, where the 100 Year flood elevation is not provided on the Flood Insurance Rate Map, the developer/applicant shall obtain any existing flood elevation data, including but not limited to such sources as Federal, State, or private hydrologic studies. Such data shall be reviewed by the Building Inspector. If the data is sufficiently detailed and accurate, it shall be relied upon to require compliance with this By-Law and the State Building Code.

## 10.3.  PREVIOUSLY APPROVED PERMITS

Construction of buildings or structures allowed by a building permit, or operations approved by a special permit must commence within six (6) months and continue to completion or as continuously and expeditiously toward completion as is reasonable. After the required time period, the construction operations must conform to any amendment to the By-Law.

## 10.4.  VIOLATIONS

The Building Inspector shall serve written notice to any person allegedly in violation of this By-Law and direct the immediate discontinuance of the violation.

### ZONING BY-LAWS TOWN OF SAUGUS

## 10.5. PROSECUTION OF VIOLATION

If the Notice of VIOLATION AND ORDER is not complied with promptly, the Building Inspector shall institute the appropriate action or proceeding at law or in equity to prevent any unlawful action, use or condition and to restrain, correct, or abate such violation. Penalties for violations may, upon conviction, be affixed in an amount of not less than $20 or more than $100 for each offense. Each day a violation is allowed to continue shall constitute a separate offense.

## 10.6. BUILDING FEES

A schedule of building fees shall be determined by the Board of Selectmen, after a public hearing. These will include the following categories: Residential – one and two-family homes, additions and accessory buildings; swimming pools, roofing, siding and wood stoves; demolition or moving a building; cluster and multi-units; commercial construction; signs - wall or pole; certificate of occupancy for one and two family residential, three or more multi-units, and commercial; temporary trailers/containers - construction and/or storage in all districts; and moving a modular home in Town.

NON-CRIMINAL DISPOSITION.  In addition to the procedures for enforcement as described above, the provisions of this zoning By-Law may also be enforced by the Building Inspector or Zoning Enforcement Officer by non-criminal complaint pursuant to the provisions of M.G.L. C. 40, Section 21D. Each day on which a violation exists shall be deemed to be a separate offense. The penalty for violations of any provision of this By-Law shall be $25 for the first offense; $50 for the second offense; $100 for the third offense and $200 for the fourth and each subsequent offense.

ZONING BY-LAWS TOWN OF SAUGUS

# 11. ARTICLE XI - BOARD OF APPEALS

## 11.1. ESTABLISHMENT OF BOARD OF APPEALS

A Board of Appeals consisting of five members shall be appointed by the Board of Selectmen. The members of said Board of Appeals serving at the time of adoption of this By-Law shall hold office for terms expiring in accordance with their appointment. Upon the expiration of the term of office of any such member, the Selectmen shall appoint on March 1 of each year a member to hold office for a term of five years. The Selectmen shall also appoint five associate members of such Board in like manner and for like terms. The Board of Appeals shall have and may exercise all rights, powers, duties and privileges granted to Boards of Appeals in Chapter 40A of the General Laws.

## 11.2. ADOPTION OF RULES

The Board shall adopt rules for conducting its business and otherwise carrying out the purpose of this By-Law. A copy of such rules shall be filed with the Town Clerk. Meetings of the Board shall be held at the call of the Chairman, and in such manner as the Board shall determine in its rules.

## 11.3. POWERS

The Board shall have the following powers:

1.  To hear and decide appeals in accordance with provisions of Chapter 40A, Section 8 of the General Laws.

2.  To grant, upon appeal or petition, a variance from the provisions of this By-Law as set forth in Chapter 40A, Section 10.

3.  To hear and decide on petitions or applications for special permits as spelled out in Article V and XII of this By-Law, as set forth in the provisions of Chapter 40A, Section 9.

In granting a variance, the Board may impose conditions, safeguards and limitations both of time and use, including the continued existence of any particular structures by excluding any condition, safeguards, or limitation based upon continued ownership of the land or structures to which the variance pertains by the applicant, petitioner or any owner.

Further, in exercising the powers granted them, the Board may, in conformity with the provisions of this By-Law and Chapter 40A, Section 14 of the General Laws, make orders or decisions, reverse or affirm in whole or in part, or modify any decision or order, and to that end shall have all the powers of the officer from whom the appeal is taken and may direct the issuance of a permit.

## 11.4. APPEALS FOR SPECIAL PERMIT

1.  An appeal may be made to the Board of Appeals by any person aggrieved by reason of his or her inability to obtain a permit or enforcement action from any administrative officer under the provisions of Chapter 40A of the General Laws, by the Metropolitan Area Planning Council or by any person including an officer or board of the Town, or of an abutting city or town aggrieved by an order or decision of the Inspector of Buildings, or other administrative official, in violation of any provisions of this By-Law or of Chapter 40A of the General Laws.

ZONING BY-LAWS TOWN OF SAUGUS

# 12. ARTICLE XII - SPECIAL PERMITS AND CONDITIONS

## 12.1. SPECIAL PERMITS

When, in their judgment, the public convenience and welfare will be substantially served, and where such will tend to improve the status of the neighborhood, and where the use would be in harmony with the intent and purpose of this By-Law, the Board of Selectmen or Board of Appeals may, in specific cases as designated in Article V, after public notice and hearing and subject to appropriate conditions and safeguards, issue a special permit.

No appeal for a special permit that has been unfavorably acted upon shall be considered on its merits by the Board within two (2) years of the date of such unfavorable action except with the consent of 4/5 of the members of the Planning board and as further provided in Chapter 40A, Section 16, of MGL.

All applications and petitions for special permits shall be filed with the Town Clerk, who shall transmit same to the appropriate Board as shown in Article V of this By-Law and in accordance with the provisions of Chapter 40A.

## 12.2. PUBLIC HEARING

The special permit granting authority shall hold a public hearing within 65 days after receipt by the Town Clerk of any appeal, application or petition in accordance with the provisions of Chapter 40A, Section 9.

Notice of public hearing shall be given in accordance with the provisions of Chapter 40A, Section 11.

## 12.3. DECISIONS OF SPECIAL PERMIT GRANTING AUTHORITY

All decisions of the Special Permit Granting Authority shall be issued in accordance with the provisions of Section 11 of Chapter 40A. Each such decision shall specify that appeals, if any, shall be made pursuant to Section 17 of Chapter 40A.

Special permits granted under this Section shall lapse within two (2) years in accordance with the provisions of Chapter 40A, Section 9.

## 12.4. SPECIAL CONDITIONS

In addition to the general conditions set forth in Section 12.1 for all special permits, the following special conditions shall apply for uses as shown in various districts in Article V - "Table of Use Regulations" as follows:

A.  BUSINESS "A" DISTRICTS: A new building or structure shall be designed, arranged and/or constructed in accordance with the following:

1.  Construction drawings and site plans shall be approved by the Board of Appeals after a hearing held therefor.

2.  All signs shall be approved by the Board after a hearing held therefor.

3.  Buildings and structures shall be one story, not to exceed 20 feet in height; this limit shall not apply to chimneys, ventilators, or skylights.

4.  Buildings and structures shall have at least the same front, side, and rear yard setbacks as required for a dwelling in the adjacent residential area.

5.  Under this Section, the area of the lot to be used as therein described shall not be less than the area required in the adjacent residential area.

6.  There shall be sufficient off street parking provided for the intended use.

### ZONING BY-LAWS TOWN OF SAUGUS

B.   FLOOD PLAIN DISTRICTS: In a Flood Plain District, no land that is subject to periodic flooding, as hereinafter described, shall be used for residence or other purposes in such a manner as to endanger health or safety of occupants thereof. The district shall be considered as overlaying other districts and no new building or structures shall be erected or constructed and no existing structure altered, enlarged, or moved; no dumping, filling, or earth transfer or relocation shall be permitted or used for any purpose other than as shown in Article V. Those shown as requiring a Special Permit by the Board of Appeals or the Board of Selectmen shall meet the following conditions:

1.   The request has been referred to the Planning Board, the Board of Health and the Conservation Commission, and reported on by all three Boards, or a period of 35 days has elapsed following such referral without receipt of such reports.

2.   The proposed use will not be detrimental to the public health, safety, and welfare.

3.   The proposed use will comply in all respects to the zoning requirements of the underlying district, or districts, within which the land is located.

In passing upon such applications, the Boards shall consider all relevant factors specified in other sections of this By-Law and:

1.   The danger to life and property due to increased flood heights or velocities caused by encroachments;

2.   The danger that materials may be swept on to other lands or downstream to the injury of others;

3.   The proposed water supply and sanitation systems and the ability of these systems to prevent disease, contamination, and unsanitary conditions;

4.   The susceptibility of the proposed facility and its contents to flood damage and the effect of such damage on the individual owners;

5.   The importance of the services provided by the proposed facility to the community;

6.   The availability of alternative locations not subject to flooding for the proposed use;

7.   The requirements of the facility for a waterfront location;

8.   The compatibility of the proposed use with existing development and development anticipated in the foreseeable future;

9.   The relationship of the proposed use to the comprehensive plan and flood plain management program for the area;

10.  The safety of access of emergency vehicles to the property in times of flood; and

11.  The expected heights, velocity, duration, rate of rise, and sediment transport of the flood waters expected at the site.

ZONING BY-LAWS TOWN OF SAUGUS

C. PLANNED MULTI-DENSITY RESIDENTIAL DEVELOPMENT:

 I. GENERAL REQUIREMENTS. For the purpose of promoting the more efficient use of land in harmony with its natural features and within the general intent of the Zoning By-Law, an owner or owners of a tract of land situated within a Limited Apartment District may, after consultation with the Planning Board, make application to the Board of Appeals for a special permit exempting such land from the requirements of the Zoning By-Law as pertains to lot size, usable land area, density or percentage of lot covered, yards, frontage requirements, and proximity of off-street parking space from any building or lot line. The major purpose of this section is to permit a creative approach to the development of residential land by accomplishing a more desirable environment than would be possible through the strict application of these Zoning By-Laws. A planned multi-residential development should thus result in (1) economical and efficient street, utility and public facility installation, correction and maintenance; (2) efficient allocation, distribution, and maintenance of common open space; (3) land use harmonious with natural features; and (4) development of real property values for the long range future.

After notice and public hearing, and after due consideration of the report and recommendations of the Planning Board, the Board of Appeals may grant such a permit, subject to the following:

1. The tract shall be at least 10 contiguous acres in single or consolidated ownership at the time of application.

2. At least 50 percent of the land area shall be set aside as common open space and offered to the Town for acceptance as public open space or covenanted by the owner as open space for passive or active recreation or cultural uses by all residents of the district.

3. The remaining 50 percent of the land area may be developed for residential and community facilities.

4. The residential net density within the developed area shall not exceed 20 dwelling units per acre, not including streets.

5. Buildings shall be at least 50 feet from any district boundary and at least 15 feet from any street line or parking area and at least 24 feet apart.

6. Buildings shall not exceed six (6) stories in height.

7. The development shall be served by a public water and sewerage system.

8. The principal streets shall be offered for acceptance as public ways. The minimum roadway width of interior one-way streets shall be 18 feet. The minimum roadway width of two-way streets shall be 20 feet.

9. Reasonable visual and acoustical privacy shall be provided where feasible. Fences, walks, barriers, and landscaping shall be used, as appropriate, for the protection and aesthetic enhancement of property and the privacy of its occupants, screening of objectionable views or uses, and reduction of noise.

10. Parking convenient to all dwelling units and other uses shall be provided pursuant to the minimum requirements of Article VIII with the exception that such parking may be closer than 10 feet from any lot line. Where appropriate, common driveways, parking areas, walks, and steps shall be provided, maintained and lighted for night use.

11. If topographical or other barriers within 50 feet of the perimeter of the development do not provide reasonable privacy for existing uses adjacent to the development, the Board of Appeals shall require either or both of the following:

   (a) Structures located on the perimeter of the development must be set back in accordance with the provisions of these Zoning By-Laws controlling the area in which the development is situated; and/or,

   (b) Structures located on the perimeter of the development must be well screened in a manner approved by the Board of Appeals.

12. The Board of Appeals may, in appropriate cases, impose further restrictions upon the tract, or parts thereof, as a condition to granting the special permit.

II. PROCEDURE. Each application for a special permit hereunder shall be accompanied by a plan, in triplicate, of the entire tract under consideration as a multi-density residential development prepared in accordance with the rules and regulations of the Planning Board as pertains to preliminary subdivision plans (whether or not all of the development constitutes a "subdivision") and without limiting the generality of the foregoing said plan shall show:

1. The existing topography at a suitable scale and contour intervals.

2. Proposed grading and drainage system for all ways within the development and the location therein of all off-street parking areas.

3. Utility design and layout.

4. Proposed fences, walks, barriers and landscaping.

5. Location of all Common Open Spaces and, if feasible, the proposed location therein of all accessory structures and improvements for educational, passive or active recreational and cultural uses, if any. The location of any proposed easement or easements shall also be shown.

Within 10 days after the receipt of the plan, the Board of Appeals shall transmit a copy thereof to the Planning Board which shall submit, in writing prior to the hearing upon such special permit, its recommendations and report to the Board of Appeals; said report by the Planning Board shall include as a minimum:

   (a) A general description of the neighborhood in which the tract lies and the effect of the plan upon the area.

   (b) The relation of the plan to the long range plan of the Town.

   (c) The extent to which the plan is designed to take advantage of the natural terrain of the tract.

   (e) The Planning Board's opinion of the overall design of the plan.

   (f) The Planning Board's opinion of the advisability of granting the special permit and as to any restrictions that should be imposed upon the tract as a condition of such permit.

D.  CLUSTER RESIDENTIAL DEVELOPMENT. GENERAL REQUIREMENTS. For single-family residential development in a cluster pattern subject to the dimensional regulation less than the minimum required for development of an individual lot in the same district, the following conditions shall apply:

1.  The tract of single or consolidated ownership at the time of application shall be at least 10 acres in size and subject to approval by the Planning Board under the Subdivision Control Law.

2.  A site plan shall be presented for the entire tract.

3.  Each individual lot shall be subject to the yard requirements for a one-family detached dwelling in the District.

4.  The total number of proposed lots in the development within any district shall not exceed the number of lots that could be developed under normal application requirements of the district.

5.  The development shall be served by a public water and sewer system.

6.  At least 10 percent of the total tract area (of which at least 50 percent shall not be wetlands or over 5 percent slope land) shall be set aside as common land and shall be either deeded to the Town or covenanted to be maintained as permanent "open space" in private or cooperative nonprofit ownership.

7.  Such common land shall be restricted to open space recreational uses as park, playground, play field, or conservation area.

8.  Such common land shall have suitable access to a street.

E.  HOME OCCUPATION. A special permit may be granted for the use of a dwelling in any "R" District for a home occupation, provided:

1.  No more than one nonresident shall be employed therein.

2.  The use is carried on strictly within the principal building.

3.  Not more than 30 percent of the existing net floor area, not to exceed 700 square feet, is devoted to such use.

4.  That there shall be no display of goods or wares visible from the street.

5.  No advertising on the premises other than a small non-electric sign not to exceed two (2) square feet in area and carrying only the occupants name and occupation.

6.  The buildings or premises occupied shall not be rendered objectionable or detrimental to the residential character of the neighborhood due to the exterior appearance, emission of odor, gas, smoke, dust, noise, electrical disturbance, or in any other way. In a multi-family dwelling, the use shall in no way become objectionable or detrimental to any residential use within the multi-family structure.

7.  Any such building shall include no feature or design not customary in buildings for residential use.

8.  Such uses as clinics, barber shops, bakeries, gift shops, beauty parlors, tea rooms, tourist homes, animal hospitals, kennels, and others of a similar nature shall not be considered as home occupations.

9.  Home occupations are limited to fine arts studios, dress making, real estate or insurance offices, catering, offices for lawyers, doctors and chiropractors, engineers, architects, and land surveyors, teaching of not more than four (4) pupils simultaneously.

10. Not more than one (1) commercial vehicle in connection with such home occupations shall be stored on the premises. An accepted off street parking space shall be provided for any such commercial vehicle.

F.  TWO-FAMILY DWELLINGS IN SINGLE-FAMILY RESIDENTIAL DISTRICTS. The Board of Appeals may, on application, issue a Special Permit for the alteration of any owner-occupied dwelling of two or more stories existing in 1978 on a lot at least 10,000 square feet in area into two-family units. Such alteration shall not exceed the existing height, and shall not change the exterior of such dwelling, except that there may be allowed the addition of dormer windows or gable roof to provide additional light and air and additional egress facilities to promote safety and convenience. Off street parking requirements shall be met. In making its decision, the Board shall consider public convenience and welfare, as well as neighborhood values, and approval may be made subject to appropriate conditions and safeguards necessary to protect such consideration.

G.  ELDERLY AND HANDICAPPED HOUSING. For the public purpose of providing for the availability of sufficient numbers of decent, safe and sanitary rental building units within the Town of Saugus for elderly and handicapped persons of low or moderate income and keeping in harmony with the general intent of the Zoning By-Law by providing housing while protecting the public health, safety, and general welfare, the Saugus Housing Authority may make application to the Board of Appeals for a Special Permit exempting a tract of land situated within an R-4 multi-density apartment district from the Zoning By-Law as it pertains to density requirements only. The major purpose of this section is to encourage and permit the efficient development of land by public funds to fill the need for increased housing now facing the older and handicapped population of the Commonwealth, which need cannot be met through strict application of the Zoning By-Law.

After notice and public hearing, the Board of Appeals may grant such a permit, subject to the following conditions:

1.  The tract shall be at least four (4) acres at the time of application.

2.  The residential net density within the tract shall not exceed 35 dwelling units per acre.

3.  The minimum total area for any one building lot shall be 10,000 square feet, with an additional 1,250 square feet of lot area required for each housing unit in excess of 6 units.

4.  Reasonable visual and acoustical privacy shall be provided where feasible. Fences, walks, barriers and landscaping shall be used, as appropriate, for the protection and aesthetic enhancement of property and the privacy of its occupants.

5.  Parking convenient to all buildings shall be provided, with one space required for every three (3) units.

6.  For the purposes of this section of the By-Law, the definitions of "elderly" and "handicapped" as currently promulgated by the U.S. Department of Housing and Urban Development (HUD) shall apply, and in case of any question as to any applicant's status, the interpretations of that agency shall control.

7.  Following the grant of the permit, the Housing Authority shall submit a site plan to the Planning Board for approval of the layout of driveways, parking, internal roadways, and provisions for adequate utilities.

8.  The Board of Appeals may, in appropriate cases, impose further restrictions upon the tract, or parts thereof, as a condition for granting the special permit.

H.  ONE-STORY MINI-STORAGE FACILITY. The Board of Appeals may, on application, issue a Special Permit in the B-2 District, for the construction of Mini-Storage Facilities, provided the following conditions are met:

1.  That a 6-ft. fence surround the facility.

2.  That use of the facility be allowed only in the daylight hours and only when an attendant is on duty.

3.  That the gate be locked securely at all other times.

ZONING BY-LAWS TOWN OF SAUGUS

4.   That no storage be allowed that would be dangerous through fire or explosion, or which might create noise, odor, smoke, fumes, or similar disturbance, The Board of Appeals may, in making its decision, add other conditions and safeguards necessary to protect convenience and welfare.

## 12.5.   SPECIAL PERMITS BY BOARD OF SELECTMEN

A special permit may be issued by the Board of Selectmen, after holding of a public hearing, for uses designated as S-2 in Article V; for dog kennels and private stables (special permit to be conditional upon meeting all rules and regulations of the Board of Health); for exterior lighting support structures over 35 feet tall, located within 1,000 feet of residential property (see Sec. 6.8F); or for exceptions to height regulations in High Rise Business and Industrial and Multi-Density Apartment districts in accordance with provisions in Article VI of this By-Law. Such permit shall be subject to conditions as deemed proper to impose, and shall include provisions for screening and enclosure of the property if visible at normal eye level and less than a distance of 200 feet from any point within a single family or general residence district. Screening shall be evergreen planting, suitable fencing or other attractive visual barrier. All conditions of Section 12.1 shall comply, as well as the following for specified uses:

A.   LOCATION OF AUTOMOBILE SERVICES. No portion of the front or side lines of a public garage, automobile repair shop, greasing station, storage battery service station, or gasoline filling station, or any of their appurtenances or accessory uses, shall hereafter be placed within 50 feet of any residence district. No driveway to such premises shall be, in any part, within 50 feet of any residential district. No such premises shall have any driveway entrance or exit for motor vehicles within 30 feet of the property used by any public or private school, public library, church playground, or institution for the sick or dependent, or for children under 16 years of age. Every filling station shall hereafter be located not less than 15 feet inside the building line and no filling shall be done except into cars standing on the property of the filling station.

On the Salem Turnpike, there shall be no gasoline pumps, signs (mobile or otherwise) or structures less than 50 feet from the street line.

On the Newburyport Turnpike (also called Broadway or Route One) and the Frank P. Bennett Highway (also called Route C-l), any new building, structure (mobile or otherwise), gasoline pump or any alteration, enlargement or extension thereof shall have a setback of at least 50 feet from the street line.

**ZONING BY-LAWS TOWN OF SAUGUS**

B.  REMOVAL OF SAND, GRAVEL, QUARRY OR OTHER EARTH MATERIAL.

    I.   The Board of Selectmen, after holding a public hearing, may grant a special permit for removal of soil, loam, clay, sand, gravel, stone or other earth materials from any land not in public use, or which is zoned as residential, that would not adversely affect the health, safety, convenience and welfare of the neighborhood or Town. In granting such a special permit, the Selectmen shall impose the following conditions:

    1.  Removal and processing operations shall not be conducted closer than 50 feet to a public street.

    2.  All equipment for sorting, washing, crushing, grading, drying, processing and treating, or other operations machinery, shall not be used closer than 100 feet from any public street or from any adjoining lot line.

    3.  Off street parking as required in the Table of Off Street Parking Regulations shall be provided.

    4.  Any access to excavated areas or areas in the process of excavation will be adequately posted with KEEP OUT - DANGER signs.

    5.  Any work face or bank that slopes more than 30 degrees downward, adjacent to a public street, will be adequately fenced at the top.

    6.  Adequate provision is to be made for drainage during and after the completion of operations.

    7.  Lateral support shall be maintained for all adjacent properties.

    8.  The use of explosives shall be done in accordance with the regulations for storage or handling of explosives as published by the Commonwealth of Massachusetts.

    9.  All operations shall be conducted in such a manner so as to comply with the laws of the Commonwealth of Massachusetts regulating water pollution and air pollution.

    10.  Before approval of a permit for any excavation, the owner shall file a performance bond or deposit money, or other negotiable securities, in an amount determined by the Board to be sufficient to cover costs of all, or any part of cleaning the site upon completion of work, such as removing stumps, large boulders, general cleanup, and other miscellaneous debris.

    11.  The permit issued shall be granted only to the owner of record and shall not be transferable.

### ZONING BY-LAWS TOWN OF SAUGUS

II.  Site plans shall be filed with the Board of Selectmen for any land that is used or intended to be used for the extraction of sand, gravel, rock, and associated earth materials. Site plans of the removal areas shall be prepared by a registered professional engineer and a registered land surveyor at a scale of 200 feet to the inch and shall be in accordance with and indicate the following:

(a)  Lot lines.

(b)  Adjacent public streets.

(c)  Proper provisions for safe and adequate water supply and sanitary sewage and for temporary and permanent drainage of the site.

(d)  Plan for regrading of all or parts of the slopes resulting from such excavation or fill.

(e)  Plan for replacements of at least four (4) inches of topsoil over all excavated, filled, or otherwise disturbed surfaces and seeding with a perennial cover crop, re-seeded as necessary to assure uniform growth and soil surface stabilization.

(f)  Plan for lighting, if night operation is contemplated.

(g)  Proper provision for vehicular traffic, service roads, control of entrances and exits to highways.

(h)  The relation of future buildings and operations machinery to the removal area.

(i)  Delineation of removal areas.

(j)  Provision for a substantial fence enclosing the excavation or quarry where any excavation or quarry will extend under original ground level or will have a depth of 10 feet or more and create a slope of more than 1 foot in 2 feet. Such fence shall be located 10 feet or more from the edge of the excavation or quarry, and shall be at least 6 feet in height.

III.  The Board of Selectmen, in granting a special permit, shall make the following stipulations:

(a)  The permit shall be for a period of not more than six (6) months but may be extended for additional periods of six 16) months at the discretion of the Selectmen. The Selectmen may, at their discretion, after the end of any six (6) month period of permission, demand a clean-up of said excavation and require the owner to establish levels, grades, and plant cover as described in the original permit.

(b)  The owner of record shall file a performance bond, deposit, or other negotiable securities in the amount determined by the Selectmen.

(c)  No loam, soil, sand, stone or gravel shall be removed from any parcel of land not in public use to any place outside the boundaries of the Town without the written permission of the Board of Selectmen.

(d)  The fee for permits granted by the Selectmen shall be at the rate of $50 per week.

June 1999

IV.  Conditions not requiring special permit:

(a)  The owner of land for which a building permit has been granted may excavate, and remove from the land, material of any nature that may impede the construction of a basement, foundation, cellar, septic tank, cesspool, leaching field, swimming pool or other accessory to the permitted use, provided the cubic yardage of such excavation shall not exceed the total volume of such purpose by more than thirty-three percent (33%).

(b)  A permit for excavation and removal of material from a lot or way that is within a subdivision that comes under the Subdivision Control Laws as defined in Mass. General Laws Chapter 41, Sections 81K to 81GG, is unnecessary, provided:

1.  A proper hearing on the subdivision plan has been held.

2.  The subdivision plan shows the proposed profile of the way and the proposed finished contour of the lots, any subsequent excavation will not alter aforesaid finished profile or contour.

3.  The subdivision plan is approved and endorsed and thereafter recorded at the Registry of Deeds.

4.  A plan that does not show such profile or contour may be supplanted by a new plan to show any profile or contour required for purposes described in this paragraph.

C.  **ADULT USES:**

Adult Use (see def.) the following conditions shall apply:

1.  Adult uses may not be located:

a)  within 1,000 feet of each other
b)  within 500 feet of the nearest lot line of a Residential District
c)  within 1,000 feet of a place of worship
d)  within 1,000 feet of a school or other non-profit educational use library or museum
e)  within 1,000 feet of a park or playground

2.  Signage must meet all requirements of ART. VII of this by-law, except that no advertisement, display or other promotional material is to be visible to the public from any public way including but not limited to pedestrian walkways.

3.  If the Adult Use allows for the showing of films or videos within the premises, the booths in which the films or videos are viewed shall not be closed off by curtains, doors or screens. All shall be clearly seen from the center of the establishment.

4.  The application for the S-2 Permit shall include the following information:

a)  Names and address of the legal owner of the establishment.

b)  Name and address of all persons having a lawful, equity or security interest in the establishment.

c)  A sworn statement must be provided stating that neither the applicant nor any person having an equity or security interest in the establishment has been convicted or violating G.L. c.119, section 63 or c. 262. Section 28.

d)  Propose security precautions.

e)  The number of employees.

5.  No Special Permit shall be issued under this section to any person convicted of violating G.L. c 119, section 63 or c.262, section 28.

6.  For the purpose of this by-law, the term "substantial or significant portion" (see Adult Use Defs.) shall mean more than 25% of stock or gross floor area, for Adult Bookstore,

**ZONING BY-LAWS TOWN OF SAUGUS**

Adult Video Store, and Adult Paraphernalia Store; and more than 25% of the entertainment at an Adult Club.

## 12.6.  SITE PLAN REVIEW

1.  <u>PURPOSE:</u> This section is enacted under the authority of M.G.L. Chapter 40A to accomplish the purposes set forth in Section 1.3 of the Zoning By-Law for the purpose of protecting the health, safety, convenience and general welfare of the inhabitants of the Town by providing for a review of plans for uses and structures that may have significant impacts on traffic, municipal and public services and utilities, environmental quality, and community values in the Town.

2.  <u>APPLICABILITY:</u> The Site Plan Review and approval provisions of this section shall apply to:

    1.  New Subdivisions of land in B or I districts into three or more lots.

    2.  Any new structure, group of structures, improvements, alterations, additions or change in use in a B or I district such that:

        (a)  A lot has more than 50% coverage by primary and accessory structures.

        (b)  Any new structure will have total gross floor area in excess of 3,000 square feet.

        (c)  An increase of at least 1,000 square feet to an existing structure will result in total gross floor are in excess of 3,000 square feet.

        NOTE: The calculation of increase of floor area shall be based on the aggregate of all new structure, improvements, alterations or enlargements.

3.  <u>BASIC REQUIREMENTS:</u>

    (a)  No building permit shall be issued for, and no person shall undertake, any use or improvement subject to this section unless an application for site plan review and approval has been prepared for the proposed development in accordance with the requirements of this section and unless such application has been approved by the Planning Board.

    (b)  No occupancy permit shall be granted by the Building Inspector until the Planning Board has given its approval that the development and any associated off-site improvements have met all the requirements for site plan review and approval, including any conditions imposed by the Planning Board.

    (c)  Notwithstanding the above, a temporary occupancy permit may be granted with the approval of the Planning Board subject to conditions for completion of work (which may include a requirement for surety in an amount and form to be determined by the Planning Board) imposed by the Planning Board.

June 1999

(d) Any changes in the approved site plan(s) or conditions attached to The Site Plan Approval must be submitted to the Planning Board for approval prior to construction completion and/or implementation. If the Board determines, by majority vote, that such changes are not significant or detrimental, then the Board may, of its own accord, enter evidence of such changes into its records without the necessity of any further public hearing or notice to interested parties. If the Planning Board finds, said changes to be significant and/or to deviate from the original approved plan in an adverse manner, and if said Board finds that the interests of the public in the development of property in accordance with this By-Law would best be served by the issuance of a new approval or the imposition of additional conditions then the Board will call for another Public Hearing to be held within twenty-one days of the receipt of notice of such requested change, such hearing to be held at the expense of the applicant, in order to take testimony from all interested parties. Within twenty-one days of the close of any such new public hearing, the Board will issue an amendment to its prior conditions and/or an approval or denial of the revised plans and all interested parties shall have the same rights of appeal as would be applicable under an original approval.

4. <u>APPLICATION AND REVIEW PROCEDURE:</u>

(a) Prior to the filing of an application subject to this section, the applicant shall submit plans to the Building Inspector, who shall advise the applicant as to the pertinent sections of the Zoning By-Law. The applicant shall then submit 10 copies of the application and site plan to the Planning Board.

(b) Upon receiving the completed applications and plans as set forth above, the Planning Board shall forthwith transmit one copy each to the Building Inspector, the Engineering Department, the Board of Health, the Police Department, the Fire Department, the Conservation Commission, the Department of Public Works and such other departments and boards as the Planning Board may determine appropriate.

(c) Such agencies shall, within 21 days of receiving said copies, report in writing to the Planning Board on (1) the adequacy of the data and methodology used by the applicant to determine impacts of proposed development and (2) the effects of the projected impacts of the proposed development. Said agencies may recommend conditions or remedial measures to accommodate or mitigate expected impacts of the proposed development. Failure by any such agency to report within the allotted time shall constitute approval by that agency of the adequacy of the submittal and also that, in the opinion of that agency, the proposed project will cause no adverse impact.

(d) The Planning Board shall not render a decision on said application until it has received and considered all reports requested from Town departments and boards, or until the 21 day period has expired, which is even earlier. Where circumstances are such that the 21 day period is insufficient to conduct an adequate review, the Planning Board may, at the written request of the applicant, extend such period to 35 days.

(e) The Planning Board shall hold a public hearing on any properly completed application within 42 days after filing, shall properly publish and serve notice of such hearing pursuant to the requirements of Chapter 40A, Section 11, and shall render its decision within 14 days after the close of said hearing. Failure of the Planning Board to take final action upon any application within 14 days after the close of such hearing held within the time frame set by Chapter 40A, Section 9 shall be deemed an approval of said application. All costs of the notice requirement shall be at the expense of the applicant.

## ZONING BY-LAWS TOWN OF SAUGUS

(f)   In reviewing the impacts of a proposed development, the Planning Board shall consider the information presented in the application for site plan approval, including all items specified in Section 5; all reports of Town departments submitted to the Planning Board pursuant to Section 4(c) and any additional information available to the Planning Board, submitted to the Planning Board by any person, official or agency, or acquired by the Planning Board on its own initiative or research.

(g)   The Planning Board shall establish and may periodically amend a schedule of fees for all applications under this section. No application shall be considered complete unless accompanied by the required fees.

(h)   The Planning Board may require the posting of a security to assure compliance with the site plan and conditions, and may revoke this special permit when work is not performed as required. Any such revocation shall require a hearing by the Planning Board within 14 days of the revocation.

5. CONTENTS AND SCOPE OF APPLICATIONS: An application for site plan review and approval under this section shall be prepared by qualified professionals, including a Registered Professional Engineer and, where required by State law, a Registered Architect and/or Registered Landscape Architect, and shall include the following items and information:

(a)   A site plan at a scale of one inch equals forty feet (1" = 40'), or such other scale as may be approved by the Planning Board indicating.

(b)   Name of the project, locus, boundaries, date, and scale of the plan.

(c)   Name and address of the record owner, developer, and seal of the engineer or surveyor.

(d)   Name and address of the record owners within 300 feet of the property lines.

(e)   All existing lot lines, easements, rights-of-way, size in acres or square feet, abutting land used and location and use of structures within 100 feet of the site.

(f)   The location and use of all existing and proposed buildings and structures within the site plan, including dimensions and height, and showing exterior entrances and exits. Single family and two-family dwellings that are part of a subdivision are excluded from this Section f.

(g)   Location of all present and proposed public and private ways, parking areas, driveways, sidewalks, ramps, curbs, fences, buffers for screening purposes, paths, landscaping, lighting fixtures, planting areas, walls, signs, service areas, refuse and other waste disposal containers.

(h)   Location of all present and proposed utility systems including sewage or septic system, water supply systems, existing and proposed surface and sub-surface drainage systems, telephone, cable and electric lines. Storm drainage system will include existing and proposed drain lines, culverts, drainage swales catch basins, head walls, end walls, hydrants, manholes, channels, and subdrainage, along with soil logs, percolation tests when necessary, and drainage calculations.

(i)   Existing and proposed topography at the two (2) foot contour level. Sufficient information to indicate areas in the site and within 50 feet of the site where gravel removal or filling is proposed and the approximate volume in cubic yards. All elevations shall refer to the nearest United States Coastal and Geodetic Bench Mark.

(j)   A landscape plan showing all existing natural land features, forest coverage and water sources, and all proposed changes to these features. Water sources will include ponds, lakes, brooks, streams, wetlands, flood plains, and drainage retention areas.

### ZONING BY-LAWS TOWN OF SAUGUS

In addition, the Planning board may, by a majority vote, also require a Traffic Impact Assessment and Environmental Impact Study, or portions thereof, both as are specifically described immediately hereinafter.

**(k) TRAFFIC IMPACT ASSESSMENT:**

(1) <u>PURPOSE:</u> To document existing traffic conditions in the vicinity of the proposed project, to describe the volume and effect of projected traffic generated by the proposed project, and to identify measures proposed to mitigate any adverse impacts on traffic.

(2) <u>FORMAT AND SCOPE:</u>

(a) Existing Traffic Conditions: Average daily and peak hour volumes, average and peak speeds, sight distances, accident data, and levels of service of intersections and streets likely to be affected by the proposed development. Generally, likely to be affected by the proposed development. Generally, such data shall be presented for all streets and intersections adjacent to or within 500 feet of the project boundaries.

(b) Projected Traffic Conditions for Design Year of Occupancy: Statement of design year of occupancy, background traffic growth on an annual average basis, impacts of proposed developments that have already been approved in part or in whole by the Town.

(c) Projected Impact of Proposed Development: Projected peak hour and daily traffic generated by the development on roads and ways in the vicinity of the development; sight lines at the intersections of the proposed driveways and streets; existing and proposed traffic controls in the vicinity of the proposed development; and projected post developments traffic volumes and levels of service of intersections and streets likely to be affected by the proposed development (as defined in "a" above).

(3) <u>TRAFFIC IMPACT STANDARDS:</u>

(1) <u>REQUIRED:</u> The "level of service" of all impacted intersections and streets shall be adequate following project development, or the total value of off-site traffic improvements required or approved by the Planning Board as a condition of approval shall be equal to no more than three percent (3%) of the total development cost of the proposed project. For purposes of this standard:

(I.) "Level of Service" (LOS) shall be determined according to criteria set forth by the Transportation Research Board of the National Research Council;

(II.) "Impacted" means located within 500 feet of the closest boundary of the project site and projected to receive at least 5 percent of the anticipated average daily or peak hour traffic generated by the proposed development;

(III.) "Adequate" shall mean a level of service of "B" or better for rural, scenic and residential streets and for all new streets and intersections to be created in connection with the project; and "D" or better for all other streets and intersections; and

ZONING BY-LAWS TOWN OF SAUGUS

(IV.) "Total Development Cost" shall mean the total of all new development-related improvements and a percentage of the cost or value of the land. This percentage shall be the ratio of the gross building area of the new construction to the gross building area of all improvements, including the proposed new construction. Building or construction costs for the relevant type of structure and use shall be determined on the basis of published standards such as those contained in the Engineering News Record or other source acceptable to the Planning Board.

(2) RECOMMENDED: The proposed site plan shall minimize points of traffic conflict, both pedestrian and vehicular. The following guidelines shall be used to achieve this standard:

(I.) Entrance and exit driveways shall be so located and designed as to achieve maximum practicable distance from existing and proposed access connections from adjacent properties.

(II.) Where possible, driveways shall be located opposite similar driveways.

(III.) Sharing of access driveways by adjoining properties and uses is encouraged.

(IV.) Left-hand turns and other turning movements shall be minimized.

(V.) Driveways shall be so located and designed as to discourage the routing of vehicular traffic to and through residential streets.

(VI.) Pedestrian and bicycle circulation shall be separated from motor vehicle circulation as far as practicable.

## (l.) ENVIRONMENTAL IMPACT STUDY:

(1) Purpose: To describe the impacts of the proposed development with respect to on-site and off-site environmental quality.

(2) Format and Scope: Identification of Potential Impacts -- Description and evaluation of potential impacts on the quality of air, public health, surface water, and ground water adjacent to or directly affected by the proposed development; on-site or off-site flooding, erosion and/or sedimentation resulting from alterations to the project site including grading changes and increases in impervious area; on-site or off-site hazards from radiological emissions or other hazardous materials; and off-site noise or light impacts.

(3) Systems Capacity: Evaluation of the adequacy of existing or proposed systems and services for water supply and disposal of liquid and solid wastes.

### ZONING BY-LAWS TOWN OF SAUGUS

(4)  Proposed Mitigation Measures: Description of proposed measures for mitigation of any potential adverse impacts identified above.

The Planning Board shall consider the following guidelines in evaluating any environmental impact study and may require a plan to provide for the protection of the interests stated herein:

I.    The proposed development shall attempt to minimize any significant emission of noise, dust, fumes, noxious gases, radiation, water pollutants, or any other similar significant adverse environmental impact.

II.   The proposed development shall not significantly increase the potential for erosion, flooding or sedimentation, either on-site or on neighboring properties; and shall not increase rates of runoff from the site to the satisfaction of the Town Engineer and Department of Public Works. Provision for attenuation of runoff pollutants and for ground water recharge shall be included in the proposal.

III.  The design of the proposed development shall minimize the destruction of unique Natural features.

IV.   Outdoor lighting, including lighting on the exterior of a building or lighting in parking area, shall be arranged to minimize glare and light spill over to neighboring properties.

6.  SPECIFIC FINDINGS REQUIRED: Prior to granting approval or disapproval, the Planning Board, shall make written findings with supporting documentation as specified below and shall file such written findings and supporting documentation in the Town Clerk's Office within 14 days of the close of the public hearing:

a)  Approval: The Planning Board shall approve an application based on its review of the projected development if said Board finds that the proposed development is in conformance with this By-Law and that said approval has taken into consideration the following standards for review:

(1)  Protection of the abutting properties and the community to minimize any detrimental use of the site.

(2)  Adequacy of the methods of disposal of sewage and refuse and the drainage of surface and subsurface water.

(3)  Adequate means of protecting wetlands, watersheds, aquifers, and well areas.

(4)  Provisions for off-street loading and unloading of vehicles incidental to the normal operation of the establishment, parking, lighting and internal traffic control.

(5)  Provision of open space consistent with Town Master Plan concepts as incorporated in the Town Zoning By-Law.

(6)  The layout of design features, such as vegetative buffers, within developments that will integrate into the existing landscape.

(7)  Consistency of the proposed development with the Town Master Plan concepts as incorporated in the Town Zoning By-Law.

(8)  Compliance with the provisions of Chapters 40A and 41, the rules and regulations of state and federal agencies.

Such findings shall pertain to the entire proposed development including any site plan or design modifications imposed by the Planning Board as a condition of its approval, and any off-site improvements proposed by the applicant or required by the Planning Board as a condition of its approval.

## ZONING BY-LAWS TOWN OF SAUGUS

b) Disapproval:

   (1) The Planning Board must disapprove an application if it is unable to make the written findings required for approval. Disapproval must be in writing and must specify the reasons for disapproval.

   (2) Notwithstanding the above, the Planning Board may approve an application if the adverse impacts of the proposed development are not significantly greater than the impacts of uses that are or can be made of the site under existing laws and regulations without a requirement for site plan review.

7.   CONDITIONS, LIMITATIONS AND SAFEGUARDS: In granting approval of an application, the Planning Board may impose conditions, the fulfillment of which is within the control of the applicant, limitations and safeguards that shall be in writing and shall be a part of such approval. Such conditions may include, among other matters and subjects:

   (a) Controls on the location and type of access to the site.

   (b) Controls on the number of vehicles that arrive or depart during the morning and/or evening peak hours (including controls on the maximum number of vehicles that may use the off-street parking areas during said periods).

   (c) Requirements for off-site improvements to improve the capacity and safety of roads, intersections, pedestrian ways, water, sewer, drainage, and other public facilities that are likely to be affected by the proposed development.

   (d) Requirements for donation and/or dedication of land for right-of-way to provide for future roadway and/or intersection widenings or improvements.

   (e) Requirements for securing the performance of all proposed work, including proposed off-site improvements, by either or both of the following methods: (1) A performance bond, a deposit of money, negotiable securities, letter of credit, or bank passbook in an amount determined by the Planning Board to be sufficient to cover the cost of all or any part of the improvements required as conditions of approval; (2) A covenant running with the land, executed and duly recorded by the owner of record whereby the required improvements shall be completed before the property may be conveyed by other than a mortgage deed or a deed subject to the requirements of the covenant. The responsibility for filing and/or recording any covenant or restrictions referred herein shall be that of the Town Counsel acting on behalf of the Planning Board.

   (f) Conditions to minimize off-site impacts on traffic and environmental quality during construction.

8.   Any person proposing a subdivision of land in a B or I district shall combine the process of Site Plan Review under this section of the zoning by-law with any review by the Planning Board required by Subdivision Control Law. The Planning Board shall, for the purpose of review, treat this as a unified submission for hearing under the Site Plan Review by-law and the Subdivision Control Law.

9.   APPEAL: Any appeal of any decision shall be made pursuant to Article XII, Section 12.3, of the Zoning By-Laws and M.G.L. Chapter 40A, Section 17.

10. SEPARABILITY : The validity of one or more provisions or clauses of this Section 12.6 shall not invalidate or impair the section as a whole or any other part hereof.

11. APPOINTMENT OF AN ASSOCIATE MEMBER. As provided by M.G.L. Chapter 40A, Section 9, one Associate Member may be appointed in the same manner in which regular members are appointed, for the purpose of action on Special Permit Applications before the Planning Board, in the case of absence, inability to act, or conflict or interest on the part of any member of the Planning Board, or in the event of a vacancy on the Board.

**ZONING BY-LAWS TOWN OF SAUGUS**

12. <u>CHANGE OF USE OF PREVIOUSLY APPROVED STRUCTURE.</u> The owner of a structure which has previously received Site Plan Review approval from the Planning Board shall return to the Board for determination of whether a new hearing and approval are required for any later significant change in use of the structure, including any use which requires extensive renovations or different parking requirements. The determination of whether the change is significant shall be make by a majority vote of the Planning Board.

ZONING BY-LAWS TOWN OF SAUGUS

# 13. ARTICLE XIII - AMENDMENT AND VALIDITY

### 13.1.   AMENDMENT

This By-Law may be amended from time to time in accordance with Section 5 of the Zoning Act. During the amendment procedure, subdivision plans in process of review by the Planning Board under the Subdivision Control Law shall be subject to the provisions of the Zoning Act, Section 6.

### 13.2.   VALIDITY

The invalidity, unconstitutionality, or illegality of any provision of the By-Law or boundary shown on the Zoning Map shall not have any effect upon the validity, constitutionality, or legality of any other provision or boundary.

**ZONING BY-LAWS TOWN OF SAUGUS**

# 14.  ARTICLE XIV - WIRELESS COMMUNICATIONS SERVICES DISTRICT

## 14.1.  PURPOSE

The purpose of this section is to establish a district in which wireless communications services may be provided with minimal harm to the public health, safety and general welfare. Specifically, the Wireless Communications Services District has been created to

(a)  protect the general public from hazards associated with wireless communications facilities and

(b)  minimize visual impacts from wireless communications facilities on residential districts within Saugus. This section does not apply to satellite dishes and antennas for residential use.

## 14.2.  DESCRIPTION

Description of Areas Included in the Wireless Communications Services District:

a)  The Wireless Communications Services District shall include all land owned by the Town of Saugus that is held in the care, custody, management and control of the Board of Selectmen or the Town Manager and all land located in B-2, B-3, I, I-1 and I-2 districts.

b)  The Wireless Communications Services District shall be construed as an overlay district with regard to said locations. All requirements of the underlying zoning district shall remain in full force and effect, except as may be specifically superseded herein.

## 14.3.  USE RESTRICTIONS

A wireless communications facility (including antennas and accessory structures, if any), antenna or satellite dish may be erected in a Wireless Communications Services District upon the issuance of a special permit by the Board of Selectmen pursuant to Article V and subject to all of the following conditions:

a)  The only wireless communications facilities allowed are free-standing monopoles, with associated antenna and/or panels. Lattice style towers and similar facilities requiring three or more legs and/or guy wires for support are not allowed.

b)  To the extent feasible, all service providers shall co-locate on a single facility. Wireless communications facilities shall be designed to accommodate the maximum number of users technologically practical. The intent of this requirement is to reduce the number of facilities that will be required to be located within the community.

c)  Any proposed extension in the height, addition of cells, antennas or panels, construction of a new facility, or replacement of a facility, shall be subject to a new application for an amendment to the Special Permit.

d)  New facilities shall be considered by the Board of Selectmen only upon a finding by the Board of Selectmen that existing or approved facilities cannot accommodate the wireless communications equipment planned for the proposed facility.

e)  In no event shall any facility be located closer than two (2) miles to any other such facility.

f)  No facility or attached accessory antenna shall exceed sixty (60) feet in height as measured from ground level at the base of the facility.

g)  All facilities shall be designed to be constructed at the minimum height necessary to accommodate the anticipated and future use.

ZONING BY-LAWS TOWN OF SAUGUS

h)  A facility shall not be erected nearer to any property line than a distance equal to the vertical height of the facility (inclusive of any appurtenant devices), measured at the mean finished grade of the facility base.

i)  A facility shall not be erected nearer to a residential lot line than 500 feet.

j)  Siting shall be such that the view of the facility from adjacent abutters, residential neighbors and other areas of Town shall be as limited as possible. All facilities shall be painted or otherwise colored so they will blend in with the landscape or the structure on which they are located. A different coloring scheme shall be used to blend the facility with the landscape below and above the tree or building line.

k)  Wireless communications facilities shall be suitably screened from abutters and residential neighborhoods.

l)  Fencing shall be provided to control access to wireless communications facilities and shall be compatible with the scenic character of the Town.

m)  Existing on-site vegetation shall be preserved to the maximum extent practicable.

n)  There shall be no signs, except for announcement signs, no trespassing signs and a required sign giving a phone number where the owner can be reached on a twenty-four (24) hour basis. All signs shall conform with the Sign By-Law.

o)  Night lighting of the facilities shall be prohibited unless required by the Federal Aviation Administration. Lighting shall be limited to that needed for emergencies and/or as required by the FAA.

p)  There shall be minimum of one (1) parking space for each facility, to be used in connection with the maintenance of the facility and the site, and not to be used for the permanent storage of vehicles.

q)  To the extent technologically feasible, all network interconnections from the facility shall be via land lines.

r)  Applicants proposing to erect facilities on municipally owned land or structures shall provide evidence of contractual authorization from the Town of Saugus to conduct wireless communications services on municipally owned property.

s)  Traffic associated with the facility and accessory facilities and structures shall not adversely affect abutting ways.

t)  Satellite dishes and/or antenna may be located on structures or may be free-standing.

u)  Satellite dishes and/or antenna shall be situated on a structure in such a manner that they are screened, preferable not being visible from abutting streets. Free standing dishes or antenna shall be located on the landscape in such a manner so as to minimize visibility from abutting streets and residences and to limit the need to remove existing vegetation. All equipment shall be colored, molded and/or installed to blend into the structure and/or the landscape.

v)  Antennas or dishes located on a structure shall not exceed ten (10) feet in height above the level of its attachment to the structure.

w)  Annual certification demonstrating continuing compliance with the standards of the Federal Communications Commission, Federal Aviation Administration and the American National Standards Institute and required maintenance shall be filed with the Building Inspector by the Special Permit holder.

x)  All unused facilities or parts thereof or accessory facilities and structures that have not been used within ninety (90) days of non-use, shall be dismantled and removed at the owner's expense.

ZONING BY-LAWS TOWN OF SAUGUS

## 14.4.  PROCEDURE FOR A SPECIAL PERMIT.

a)  All applications for wireless communications facilities, antennas or satellite dishes shall be made and filed on the applicable application forms for special permit in compliance with the Saugus Board of Selectmen Application Instructions. Five copies of the following information must be submitted for an application to be considered complete.

   I.  A locus plan at a scale of 1" = 200' that shall show all property lines, the exact location of the proposed structure(s), street, landscape features, residential dwellings and neighborhoods and all buildings within five-hundred (500) feet of the facility.

   II.  A color photograph or rendition of the facility with its antennas and/or panels. For satellite dishes or antennas, a color photograph or rendition illustrating the dish or antenna at the proposed location is required. A rendition shall also be prepared illustrating a view of the monopole, dish or antenna from the nearest street or streets.

   III.  The following information must be prepared by a professional engineer:

      a)  A description of the facility and the technical, economic and other reasons for the proposed location, height and design.

      b)  Confirmation that the facility complies with all applicable Federal and State standards.

      c)  A description of the capacity of the facility including the number and type of panels, antennas and/or transmitter receivers that it can accommodate and the basis for these calculations.

      d)  If applicable, a written statement that the proposed facility complies with, or is exempt from applicable regulations administered by the Federal Aviation Administration (FAA), Federal Communications Commission (FCC), Massachusetts Aeronautics Commission and the Massachusetts Department of Public Health.

      e)  The applicable review and advertising fees as noted in the application guidelines.

## 14.5.  EXEMPTIONS.

a)  The following types of wireless communications facilities are exempt from this Article XIV:

   I.  Amateur radio towers used in accordance with the terms of any amateur radio service license issued by the Federal Communications Commission, provided that (1) the tower is not used or licensed for any commercial purpose; (2) the tower must have a cost or replacement value of less than $10,000; and (3) the tower must be removed if the use is discontinued for one year.

   II.  Facilities used for the purposes set forth in M.G.L. c.40A, Sec. 3.